595 F.2d 998
 20 Fair Empl.Prac.Cas. 569, 19 Empl. Prac.
Dec. P 9237
Reddick LITTLE, on behalf of himself and others similarly
situated, Plaintiff- Appellant, Cross-Appellee,
v.
SOUTHERN ELECTRIC STEEL CO., Etc., Defendant-Appellee, Cross-Appellant,
United Steelworkers of America, AFL-CIO, et al., Defendants-Appellees.
 No. 77-1435.
 United States Court of Appeals,
Fifth Circuit.
 May 22, 1979.
 
 U. W. Clemon, Birmingham, Ala., Barry L. Goldstein, Washington, D. C., Jack Greenberg, New York City, for plaintiff-appellant.
 Paul E. Mirengoff, Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Charles L. Reischel, Asst. Gen. Counsel, Equal Employment Opportunity Commission, Elaine R. Jones, Washington, D. C., for amicus curiae.
 John J. Coleman, Jr., Thad G. Long, Birmingham, Ala., for Southern Elec. Steel Co.
 John C. Falkenberry, Jerome A. Cooper, Birmingham, Ala., Michael H. Gottesman, Washington, D. C., Bernard Kleiman, Gen. Counsel, Chicago, Ill., for United Steelworkers and Local 5388.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before TUTTLE, TJOFLAT and HILL, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 Reddick Little, a forklift operator for Southern Electric Steel Company, appeals from a $2,400 judgment against him for attorney's fees as the unsuccessful plaintiff in a Title VII[1] and a section 1981[2] suit alleging racial discrimination in employment practices.
 
 
 2
 Significantly, the merits of Little's claims against his employer have never been tried. The actions which subjected him to the court's condemnation all occurred in procedural aspects of the litigation. His maneuvering to get to first base via either § 1981 or Title VII, after receiving a right to sue letter from the EEOC, so entangled the plaintiff that not only did he not get beyond the pleading stage but he ended up with a judgment against him and in favor of his employer for $2,000 and in favor of his union local, a joint defendant, for $400.
 
 
 3
 Southern Electric filed a cross-appeal, claiming that the attorney's fees allowed it by the trial court were not enough, and that the court erred in not granting the total amount of fees for the actual hours expended because the court was "mindful of the possible burden to the plaintiff."[3]
 
 
 4
 I. The Case.
 
 
 5
 In 1969 the appellant filed a complaint with the EEOC against his employer, Southern Electric Steel Company (SESCO), and Steelworkers Local 5388, his union, alleging racial discrimination. Another employee, Richard Gooden, filed a complaint at about the same time, and the two complaints were consolidated for investigation under the same EEOC file number, YBIO-101. On January 23, 1973, SESCO received two letters addressed to Richard Gooden and Southern Electric Steel Company, bearing file number YBIO-101. These letters notified the charging party, Gooden, and the respondent that "the Commission concludes that there is not reasonable cause to believe the charge is true." These two letters concluded by stating "should the charging party wish to pursue this matter further he may do so by filing a private action in Federal District Court within 90 days of his receipt of this letter and by taking the other procedural steps set out in the enclosed Notice of Right to Sue,"[4] (emphasis added).
 
 
 6
 In addition, under the same date, SESCO received a short and long letter addressed to Little and to Southern Electric Steel Company, bearing the same file number, YBIO-101, and Little also received the short letter shortly thereafter. These letters addressed to Little and SESCO are not claimed by the employer to be right to sue letters. They are headed "Determination" and state that the Commission concludes that there is reasonable cause to believe that several of the charges are true.[5] They then invited the parties to join with the EEOC in a collective effort toward just resolution of the matter and enclosed an information sheet entitled "Notice of Conciliation Process." Attached to the short letter, and thus sent to Little, was a receipt for certified mail signed by Little indicating that the letter was received on January 28, 1973. The photocopy of this letter with the receipt attached carries the following handwritten words: "(O1) LOD(CP Little) YBIO-101."[6]
 
 
 7
 SESCO also received from the EEOC at the same time a document entitled "Notice of Right to Sue Within 90 Days." No one was able to testify which covering letter contained the Notice of Right to Sue; that is, whether it was the Gooden letter or the Little letter. It referred to case number YBIO-101 and showed that it was to be sent by certified mail with return receipt requested. The EEOC file contained no return receipt other than the one mentioned above which was identified as related to the LOD sent to Little.
 
 
 8
 On August 1, 1974, while EEOC conciliation was under way, Little filed a section 1981 action. In October, he amended to include a Title VII claim. This was stricken by the court in January 1975, for reasons not indicated on this record.[7]
 
 
 9
 Little has contended throughout the litigation that he did not receive a right to sue letter (RSL) among the several mailings of January 23, 1973. On April 4, 1975, after the dismissal of his amendment, the EEOC issued the RSL at his request. He then moved for leave to amend his 1981 claim to include a Title VII claim. The defendants opposed this as untimely and, before the trial court acted on the matter, the 90 days on his RSL was fast running out. After discussing the problem with the court, his counsel filed a second suit alleging both section 1981 and Title VII claims, with a view toward consolidating this action with the first suit. The second suit, of course, alleged that he was within the 90 day period from the issuance of the letter.
 
 
 10
 On May 25, 1975, the court conducted an evidentiary hearing on the motion to amend in the first suit. The issue was whether the April, 1975, RSL was valid as the first RSL Little received on this claim. This depended on whether the January 26, 1973, EEOC letter to Little included an RSL. In addition to the documentary evidence outlined above, the regional counsel of the EEOC testified as to the Commission's practice. She testified that the Commission did not issue an RSL when it notified the parties that conciliation would be attempted. Little himself testified as to what he had received. Although his testimony was extremely confused, he denied at all times having received an RSL in connection with the January 26, 1973, letter of determination. It is clear from his testimony that he was confused by the dates.[8] The trial court, based on his aberrant testimony on cross examination that he received a right to sue letter in 1971, concluded that he had received a right to sue letter in 1973.[9]
 
 
 11
 On the basis of this determination, the court denied leave to amend, because the failure to file suit or to amend a pending suit to assert the claim within 90 days of the RSL deprived the court of jurisdiction over the Title VII claim. The court made the following finding of fact:
 
 
 12
 Plaintiff Little, the Court finds, has limited education. His testimony is baffling in many respects since he altered his testimony with respect to the receipt of suit letters many times in the course of his testimony. Whether variation in his testimony resulted from his relative lack of sophistication, or whether from an intentional desire to fabricate on his part, it is evident to the Court, and the Court so finds, that the named plaintiff received a Right-to-Sue notice for his first EEOC charge shortly after January 23, 1973; and, after receiving same, plaintiff failed to institute a law suit within 90 days.
 
 
 13
 The court thereafter dismissed the complaint, because it had required the plaintiff to elect to continue his section 1981 claim either in this action or in the second one, about which more will be said later, and the plaintiff struck his 1981 claim from this suit, leaving nothing but the effort to give life to the Title VII case by way of the amendment. The plaintiff appealed the dismissal to this court, where the question was the correctness of the trial court's finding that Little had received a right to sue notice in 1973. This court, in a per curiam opinion without oral argument, affirmed the judgment of the trial court by stating that this court was unable to determine on the record that the trial court's finding was clearly erroneous. Little v. Southern Electric Steel Co., 532 F.2d 185 (5th Cir. 1976).
 
 
 14
 As indicated above, prior to the trial court's decision on the motion to amend, plaintiff's counsel notified the trial court that he was concerned about the possible expiration of the 90 day jurisdictional period and felt it necessary to file an additional suit under the 1975 RSL in order to protect Little's right to sue while jurisdiction lasted. The trial court indicated no criticism of this course, and in fact cooperated by suggesting that on the filing of such suit, plaintiff's suggestion that it be consolidated with the pending action could probably be accomplished.[10] Thereupon the second complaint was filed on June 5 based on the same claims contained in the prior suit, and alleging the receipt on April 7, 1975, of a right to sue letter. In response to a motion to dismiss, the trial court held that it had already decided that a right to sue letter on this claim was issued in January, 1973, and that therefore the letter issued at the request of the plaintiff in April, 1975, was a nullity and jurisdiction over the Title VII action was lacking. The court further decided that Little had elected to pursue his section 1981 rights in the earlier suit and that therefore nothing remained in the 1975 action to be litigated. The court dismissed the complaint, but reserved for later consideration the defendants' claim that they were entitled to counsel fees under the provisions of section 706(k) of Title VII of the Civil Rights Act of 1964, apparently waiting the outcome of the appeal of the earlier case.
 
 
 15
 Some eighteen months later, upon motion of the defendants, the trial court held a hearing on the award of attorney's fees. The plaintiffs did not contest the amount of a reasonable fee for services performed by counsel for the defendants in the litigation or the number of hours alleged to have been spent by counsel, but they did contest the existence of grounds for the award of such fees and contended that the plaintiff's economic status should bear on the size of such an award, if any could properly be made.
 
 
 16
 The trial court recognized that the sum of $3,199.50 would be reasonable compensation to counsel for the services they performed. However, it reduced this amount to $2,400 saying: "The court is of the opinion that ability of the plaintiff to pay should be considered in awarding attorney's fees to the successful defendants in Title VII cases." The court entered judgment for $2,000 in favor of SESCO and $400 in favor of the local. Little appeals from the award of attorney's fees. SESCO cross-appeals from the court's action in reducing the attorney's fees below $3,199.50. The union does not cross-appeal but stands on its contention that the trial court did not abuse its discretion in the fixing of the fees.
 
 
 17
 Counsel for both appellees urge us to consider aspects of the litigation between Little and SESCO and the union other than those on which the trial court based its determination that Little should be cast in attorney's fees. Of course, in determining the propriety of the trial court's determination, we consider only those matters upon which it based its conclusion that the statute authorized the imposition of attorney's fees on the unsuccessful plaintiff. The court considered three separate factors:
 
 
 18
 In considering the case at bar, the Court concludes that an award of some attorney's fees is appropriate. In the first place, the Court takes cognizance of the fact that the plaintiff admitted in sworn testimony in open court that he received a right to sue letter long before he brought suit (5/23/75 Tr. 81-82) and he must have known that his jurisdictional time for filing suit had expired long before. Second, plaintiff's testimony was so inconsistent and contradictory throughout as to suggest strongly that he was lying under oath. Third, plaintiff had already filed a prior pending civil action against the defendants (C.A.No.74-G-772-S) raising the same issues, and, indeed, the pertinent evidence in the instant action was incorporated herein from the prior pending action. There is no apparent reason why the issues raised in the instant action could not have been fully litigated in the prior pending action, without resorting to new litigation unless it was for the uncommendable purpose of avoiding the finality requirements of law in order to take a piecemeal appeal of certain issues in advance of the conclusion of the prior litigation. Under all such circumstances, the Court is of the opinion in the exercise of its judicial discretion that attorneys' fees should be awarded the defendants.
 
 
 19
 II. Standard For Awarding Attorney's Fees to a Successful
 
 
 20
 Defendant in a Title VII Case.
 
 
 21
 Section 706(k) of Title VII of the Civil Rights Act of 1964[11] provides:
 
 
 22
 In any action or proceeding under this . . . (Title) the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . .
 
 
 23
 A wide range of views developed among the several courts of appeals as to the width of the trial court's discretion to allow attorney's fees to a prevailing defendant in a Title VII case. At the time of the trial court's judgment, this court had not spoken on the subject. The Court of Appeals for the Third Circuit in United States Steel Corp. v. United States, 519 F.2d 359 (3d Cir. 1975), affirmed a judgment of the trial court which had denied a fee award to a successful defendant because it had not found the plaintiff's action "unfounded, meritless, frivolous or vexatiously brought." 519 F.2d at 363. In a similar case, the Court of Appeals for the Second Circuit in Carrion v. Yeshiva University, 535 F.2d 722 (2d Cir. 1976), upheld an attorney's fee award to a successful defendant while stating that such award should be permitted "not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless, or vexatious." 535 F.2d at 727. In Wright v. Stone Container Corp., 524 F.2d 1058 (8th Cir. 1975), the Court of Appeals affirmed a denial of attorney's fees to a successful defendant when it found that the plaintiff brought its action in "good faith."
 
 
 24
 Subsequent to the district court's order in this case, this court seems to have adopted the standard announced in United States Steel Corp. and Carrion. In Bolton v. Murray Envelope Corp., 553 F.2d 881, 884 n. 2 (5th Cir. 1977), we said:
 
 
 25
 Although the section makes no distinction between plaintiffs and defendants as to the prevailing party, at least two circuits have held that, since a defendant furthers no congressional policies, a district court should only utilize its discretion to award costs to defendants when the suit is vexatious or frivolous. Carrion v. Yeshiva University, 535 F.2d 722 (2d Cir. 1976); United States Steel Corp. v. United States, 519 F.2d 359 (3d Cir. 1975). See also Van Hoomissen v. Xerox Corp., 503 F.2d 1131 (9th Cir. 1974). In view of these cases we hold that it would be inappropriate for the district court to award any fees to the defendant in this case, either explicitly or as an offset to those fees awarded the attorney of the class.
 
 
 26
 Apparently overlooking the Bolton case, this court several months later, in United States v. Allegheny Ludlum Industries, Inc., 558 F.2d 742 (5th Cir. 1977), said in dictum:
 
 
 27
 We write briefly for . . . (the district court's) guidance in this matter. We are aware that several circuits have, arguing policy grounds, adopted such a double standard, awarding fees against plaintiffs only in the event of frivolous or vexatious claims. See, e. g., United States Steel Corp. v. United States, 519 F.2d 359, 364-65 (3d Cir. 1975). We are unable to read the identical language as intended by Congress to produce different results depending upon whether the "prevailing party" is the plaintiff or the defendant. Instead, Congress by plain words, rested such awards in the trial court's unfettered discretion.
 
 
 28
 558 F.2d at 744.
 
 
 29
 The Supreme Court has now resolved this conflict. In Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978), the Court considered "what standard should inform a district court's discretion in deciding whether to award attorney's fees to a successful Defendant in a Title VII action." After stating defendant's contention that every prevailing defendant in a Title VII action should receive attorney's fees " 'unless special circumstances would render such an award unjust,' " the Court announced its reason for rejecting this interpretation of the statute:
 
 
 30
 Relying on what it terms "the plain meaning of the statute," the company argues that the language of § 706(k) admits of only one interpretation: "A prevailing defendant is entitled to an award of attorney's fees on the same basis as a prevailing plaintiff." But the permissive and discretionary language of the statute does not even invite, let alone require, such a mechanical construction. The terms of § 706(k) provide no indication whatever of the circumstances under which either a plaintiff Or a defendant should be entitled to attorney's fees. And a moment's reflection reveals that there are at least two strong equitable considerations counselling an attorney's fee award to a prevailing Title VII plaintiff that are wholly absent in the case of a prevailing Title VII defendant.
 
 
 31
 First, as emphasized so forcefully in Piggie Park, (Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)) the plaintiff is the chosen instrument of Congress to vindicate "a policy that Congress considered of the highest priority." 390 U.S. at 402, 88 S.Ct. 964, 966. Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law. As the Court of Appeals clearly perceived, "these policy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant." 550 F.2d at 951. A successful defendant seeking counsel fees under § 706(k) must rely on quite different equitable considerations.
 
 
 32
 434 U.S. at 418-419, 98 S.Ct. at 698-699 (emphasis in original). The Court made it clear that it was rejecting the position enunciated in Allegheny-Ludlum. 434 U.S. at 414 n. 12, 98 S.Ct. 694.
 
 
 33
 The Court then rejected the extreme opposite contention, that attorney's fees can be allowed a defendant only if the plaintiff had proceeded in subjective bad faith. The Court then cited with approval United States Steel Corp., supra, and Carrion, supra, and held: "In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421, 98 S.Ct. at 700.
 
 
 34
 III. The Standard Applied in this Case.
 
 
 35
 The trial court in this case did not make its findings in the terminology announced by the Supreme Court in Christiansburg. In view of the standard announced in Christiansburg, we could not permit an award of attorney's fees against an unsuccessful plaintiff without a remand to the trial court to apply this standard to its findings of fact. See EEOC v. Datapoint Corp., 570 F.2d 1264, 1271-72 (5th Cir. 1978); Lopez v. Aransas County Independent School District, 570 F.2d 541, 545 (5th Cir. 1978); Allegheny-Ludlum, supra, on petition for rehearing, 568 F.2d 1073 (5th Cir. 1978) (per curiam). Here, however, we think it inappropriate to remand for that purpose because we conclude that the record before us would not support a finding that plaintiff's action in filing this suit was frivolous, unreasonable, or without foundation.
 
 
 36
 The first basis suggested by the trial court for its determination was that since the plaintiff had admitted in sworn testimony that he received a right to sue letter long before he brought suit, he must have known that his jurisdictional time for filing suit had expired long before. It is true that under cross examination, the plaintiff gave several dates as of which he might have received a right to sue letter. These dates were 1970, 1971, 1972, 1974 and 1975. In spite of the most rigorous cross examination, he repeatedly denied receiving one in 1973. The trial judge pointed out to him that in speaking of 1972 he was mistaking the date of a federal regulation, cited in the first paragraph of the letter, as the date of a right to sue letter. Interestingly enough, reference to all of the correspondence dated January 23, 1973, discloses that none of them is dated at the top of the letter where, in normal correspondence, the date of writing is shown. Each of these letters has the date stamped in smaller type at the bottom of the page if it is a one page letter, or at the bottom of the last page if the letter has more than one page. Little corrected his testimony as he actually saw the dates on the RSL's of 1974 and 1975, and he adhered to this notwithstanding seven or eight questions from the trial court asking him how he could justify his original statement that he received such a letter in 1971 with his original and final testimony that the only RSL's he received were in 1974 and 1975. Moreover, the documentary evidence itself seems to indicate that the unaddressed RSL dated January 23 was mailed to charging party Gooden and not to plaintiff Little. The Gooden letters expressly stated that they enclosed a right to sue letter, and the customary word "enclosure" appeared at the bottom of the last page. On the other hand, the Little letter did not refer to a right to sue letter. To the contrary, it did state that the EEOC would seek to effect conciliation. It also included an enclosure stating: "We enclose an information sheet entitled 'notice of conciliation process.' " It also had the customary word "enclosure" at the bottom of the page.[12]
 
 
 37
 In spite of this, the court found as a fact that Little did receive a January 23, 1973, right to sue letter. This finding is binding for the purpose of this litigation, because this court affirmed the judgment of the trial court when that matter came up on appeal.
 
 
 38
 The reason for our careful consideration of the documentary evidence is that it bears on Little's knowledge concerning the effect of the letter he received. Although he is bound by a finding that he did receive "a right to sue notice for his first EEOC charge shortly after January 23, 1973," there is no factual basis upon which the court could find that Little "must have known that his jurisdictional time for filing suit had expired long before." There is no evidence that Little actually knew what the letter he received was. It is undisputed that Little turned over all of his correspondence from the EECO to his counsel. On the face of this correspondence, it appears in this record, counsel had some basis for proceeding on the 1975 RSL. Nor is there any evidence that Little had a discussion of the legal effect of the correspondence with his counsel and had it explained that the letter contained a time bomb which might destroy his right to sue. Faced with no evidence of actual knowledge that Title VII jurisdiction had lapsed, we hold that the filing of the suit on plaintiff's behalf by experienced trial counsel could not support a finding by the trial court that such action by a lay plaintiff was "frivolous, unreasonable or without foundation."
 
 
 39
 The second basis for the trial court's decision was its statement that "plaintiff's testimony was so inconsistent and contradictory throughout as to suggest strongly that he was lying under oath." The plaintiff, as stated above, is bound by the trial court's decision in the earlier proceedings that he had received a right to sue letter shortly after January 23, 1973. Obviously, this would not by itself support a finding that in testifying to the contrary, Little "was lying under oath." Of course, the trial court did not make an explicit finding that he was doing so. Even so, its language is difficult to understand in light of its question raised in findings of fact fifteen months earlier, within days after the end of the hearing, "whether variations in (Little's) testimony resulted from his relative lack of sophistication, or whether from an intentional desire to fabricate on his part. . . . " In any event, the court did not make a finding that Little's testimony was false. Under the Christiansburg standard, no decision to award attorney's fees could therefore be based on this part of the court's findings.
 
 
 40
 We come to the last of the three bases upon which the trial court's judgment was posited. This is that "plaintiff had already filed a prior pending civil action against the defendants (C.A.No.74-G-772-S) raising the same issues, and indeed, the pertinent evidence in the instant action was incorporated herein from the prior pending action. There is no apparent reason why the issues raised in the instant action could not have been fully litigated in the prior pending action, without resorting to new litigation unless it was for the uncommendable purpose of avoiding the finality requirements of law in order to take a piecemeal appeal of certain issues in advance of the conclusion of the prior litigation." We confess to a confusion as to what the trial court really intended to criticize. In any event, although the trial court found there was no apparent reason for the filing of the second action, it made no finding that the second action was "frivolous, unreasonable or without foundation."
 
 
 41
 Even if made, such a finding would not be supported by the record. It is clear that in the prior pending case, Little's ability to maintain his suit depended upon his proposed amendment, based on the 1975 RSL. This amendment in turn depended on the trial judge's decision whether Little had received an RSL January 23, 1973. The court had this matter under advisement while the 90 days following the issue of the 1975 RSL were running. If Little waited until the court's decision, and that did not occur until after the running of the 90 day period, he would have been thrown out for want of jurisdiction. In these circumstances, his counsel discussed the matter frankly with the court in the colloquy contained in footnote 8, Supra, and the court seemed fully to understand that it would be appropriate for Little to file this present action. If the court did not actually invite the filing of the action, it certainly acquiesced in it. The subsequent filing of that suit, then, could not conceivably be the basis of any criticism of the lay plaintiff. Certainly it could not be the basis of a finding that the filing of the action was either "frivolous, unreasonable or without foundation."
 
 
 42
 We are of the view that the record fails to support the findings actually made by the trial court as the basis for awarding the attorney's fees and, further, that the record would not support a finding that the filing of this action satisfied the standards by which trial courts are permitted to assess attorney's fees against an unsuccessful plaintiff in a Title VII action.
 
 
 43
 The judgment is REVERSED and the case is REMANDED with directions that the motion for attorney's fees be denied.
 
 
 44
 REVERSED and REMANDED.
 
 
 
 [1]
 Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e Et seq
 
 
 [2]
 42 U.S.C. § 1981
 
 
 [3]
 The trial court found that Little had an annual income of $13,629.44, that he had six dependents, that he was purchasing his own home and his monthly mortgage payment together with utilities amounted to $160 on the average, and that he had other debts totalling $7,500
 
 
 [4]
 The Equal Employment Opportunity Commission witness explained the reason for addressing two letters under these circumstances. One is called the long letter and the other the short letter. The long letter, normally sent to the employer, disclosed information gleaned from inquiries or investigation made following the filing of the charge. The short letter did not contain any of this information, because until this court decided Kessler & Co. v. EEOC, 472 F.2d 1147 (5th Cir.) (en banc), Cert. denied, 412 U.S. 939 (93 S.Ct. 2774, 37 L.Ed.2d 398) (1973), the EEOC officials considered that they were prohibited by law from disclosing such information to the charging party
 
 
 [5]
 These include a charge that the respondent failed to promote blacks as a class because of their race; that the respondent violated Title VII by maintaining racially segregated facilities; that respondent's requirement of a high school diploma in the selection of employees for the apprentice program discriminated against blacks as a class
 
 
 [6]
 It is clear from the record that in officialese LOD stands for Letter of Determination. Similarly, it is clear that RSL stands for Right to Sue Letter. It is also obvious that CP on this exhibit stands for charging party. It is not clear what (01) means
 
 
 [7]
 From the subsequent proceedings, it seems quite likely that the reason this attempt to amend was denied is that it did not allege the existence of a right to sue letter issued within the previous 90 days
 
 
 [8]
 At one time he thought he had filed the original claim in 1967, when it was clear from the records that it was filed in 1969. At another time, he mistook the date of a regulation shown on the face of one of the letters as a date when he might have received a right to sue letter. This error was called to his attention by the trial judge. Although his direct testimony was that he received only two such letters, one in 1974 and one in 1975, on cross examination he stated that he had received a right to sue letter in 1971 and one in 1974. He later corrected this testimony repeatedly saying that the two letters shown him, issued in 1974 and 1975 were the only two he had received. The RSL received in 1974 related to an entirely different claim and is not of concern to this litigation
 
 
 [9]
 This followed the trial judge's repeated questioning of Little as to his answers on cross examination that he had received an RSL in 1971. The court asked if his reference to 1971 could have meant that he had received the RSL in 1973. Little consistently denied receiving any RSL other than the two in 1974 and 1975
 
 
 [10]
 Because the filing of this additional suit is criticized in the trial court's announced reason for granting attorney's fees to the defendant, it is important to reproduce this discussion:
 MR. CLEMON: Your Honor, before we go off the record, I think it's probably only fair to apprise the court that since this matter of dealing with the motion to amend may conceivably go over past, when is it, July 4?
 MISS PRIVITT: July 3rd.
 MR. CLEMON: Around July 3rd which would be the period when the 90 days on the most recent suit letter would have expired, we are contemplating going ahead and filing a lawsuit on that suit letter, then moving to consolidate, because we don't want to take a chance that those 90 days would run out during the pendency of these proceedings.
 THE COURT: Well, I would think if you would call it to the Clerk's attention when you file it, that I already have this case
 MR. CLEMON: We have that in mind, Your Honor.
 THE COURT: Whatever Judge it was assigned to would be delighted to allow me to consolidate it. I don't have the slightest doubt of that. Might be assigned to me anyway.
 
 
 [11]
 42 U.S.C. § 2000e-5(k)
 
 
 [12]
 It should be noted that in each instance the word "enclosure" was in the singular, reasonably implying that there was only one enclosure in each of the two letters that which was expressly mentioned in the body of the letter