**Dennis J. LEWIS, Plaintiff-Appellant,**

v.

**BROWN & ROOT, INC.,**
**Defendant-Appellee.**

No. 82–2217.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1983.

Attorney Fee Awards Vacated
Jan. 9, 1983.

Horace R. George, Houston, Tex., for plaintiff-appellant.

Christopher A. Knepp, Houston, Tex., for defendant-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

GEE, Circuit Judge:

The record in this case paints a convincing picture of the sort of civil rights action that should never have been filed.

Plaintiff Dennis J. Lewis is a thirty-year old black native and citizen of Trinidad, W.I. He had two years of schooling there to become a pipefitter and served an apprenticeship in that trade at the Shell Chemical plant in Trinidad. In 1976, at the age of twenty-three, we find him at work in Texas for defendant Brown & Root as a pipefitter's helper. In December of that year he was discharged for absenteeism. Between then and the year 1980, he was rehired and released four times by Brown & Root as a pipefitter or pipehanger. One of these releases resulted from a reduction of force; three times he was fired—twice for disobedience to instructions and once for incompetence.

On January 14, 1980, having again been rehired, he was discharged for loafing. This occasion gave rise to the present legal action. Since then, he has been reemployed by Brown & Root four times and released, three times in a reduction of force and once for insubordination. In August of 1980, between stints with Brown & Root, he filed this action claiming that he was a United States citizen, that he had not been discharged for loafing on January 14, 1980, and that he had been discharged and not later rehired because he was black.[1] In addition to other claims for relief, he prayed that Brown & Root be required to give him "training and other assistance as necessary to enable the Plaintiff to overcome the effects of past discrimination,"[2]

---

1. In April, the EEOC issued Lewis his Notice of Right to Sue, noting that "No reasonable cause was found to believe that the allegations made in your charge are true, as indicated in the attached determination."

2. Presumably suffered by him in Trinidad, since he had been working for Brown & Root off and on, at advancing pay scales, during most of his adult life.

be required to institute "an active recruitment policy," and so on.

The progress of Mr. Lewis's action has not been such as to signify great seriousness. Six weeks after it was filed, the defendant noticed Lewis's deposition for October 8, 1980. Thereafter, for his counsel's convenience and at his request, it was by agreement reset for October 14. Neither Lewis nor his counsel appeared at the appointed time on October 14, and, in consequence, Brown & Root moved for dismissal of the case, default judgment, and other sanctions. Action on that motion was forestalled, however, by a superseding default on the part of plaintiff's counsel; though duly notified of a November 2 docket call, neither plaintiff nor his counsel appeared and the case was dismissed for want of prosecution. A motion to reinstate, filed on November 5, sought indulgence on the ground of counsel's "mistake, inadvertence and failure to properly record the date of the Docket Call . . . ." On December 30, 1981, it was granted.

The action was set for trial at 9:30 A.M. on April 21, 1981. Trial was delayed for forty-five minutes because Lewis, the sole plaintiff's witness, failed to appear until 10:15 A.M. It then commenced, and Mr. Lewis's testimony was heard until 12:20 P.M. At that time, counsel for Lewis requested a recess. One was granted, of fifteen minutes duration—until 12:35 P.M. At that time the court reconvened. Neither Lewis nor counsel appeared. After awaiting their appearance for fifteen minutes, the court dismissed Lewis's case.

Before the recess, Lewis's counsel had advised the court that Lewis would be his sole witness and, cross-examination having been completed, that he would require only a short redirect to complete his case. So far as the record shows, neither Lewis nor his counsel ever appeared again after the recess. Counsel for Lewis maintains on brief and at argument that he had other matters to attend to during the customary lunch break, that he informed a courtroom attendant that he might be "a couple of minutes late" in returning from the fifteen-minute recess, and that when he returned half an hour late the courtroom was empty

and he was later advised that his case had been dismissed.

Indeed it had, both as supported by no evidence of racial animus and for want of prosecution. Mr. Lewis appeals from the dismissal, as well as from the court's award of $2,500 attorney's fees against him and his attorney, jointly and severally, on the basis of 28 U.S.C. § 1927 and the authority of *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (42 U.S.C. § 2000e–5(k)). At oral argument before us, Lewis's counsel explained that he had other business to transact during the recess and that he returned as soon as that had been attended to. He also maintained that he established a prima facie case of discrimination by the testimony of his client and that, given this, neither the dismissal of the case nor the award of attorney's fees can be viewed as proper. We disagree and affirm both aspects of the decision.

A dismissal based on the failure of plaintiff to prove an essential element of his case normally would be improper if entered before plaintiff had completed the presentation of his evidence. Here, decision was rendered after plaintiff had presented all his witnesses—consisting of roughly two hours of plaintiff's testimony—and after the defense had completed its cross-examination. It is true that Lewis's counsel advised the court that he wished a few more minutes for redirect. It is also true, as we have seen, that he requested a 15-minute recess and did not return when the court reconvened at the designated time, nor were he or his client to be found when the court dismissed the case another 15 minutes later. We find, in the circumstances of this case, that through his actions Lewis's counsel had waived his opportunity to conduct redirect. With no witnesses left to call, the district court properly considered plaintiff's case closed and dismissed the case based on Lewis's failure to prove a discriminatory motive.

Our survey of the record amply bears out the court's conclusion that Lewis offered no evidence that either his dis-

charge or the delay of some ten months before he was rehired resulted from racial bias.[3] Both Lewis and his white helper, caught wrestling over a bicycle during work hours, were discharged. Let Lewis's testimony settle the matter:

Q. Now, you didn't tell the EEOC that you were discharged because of your race, because you knew you were not discharged because of your race, didn't you?

A. I was discharged because Mr. Spurgeon [a supervisor] thought he was doing the right thing as a superior. He saw two people in a situation and he was doing what was best for him to do as a superior, someone in responsibility. He told me he eliminated both parties. (Tr. 44–5).

The same is true of the failure to rehire Lewis though his discharged white helper was rehired in thirty days. When Lewis reported to reapply, he was surprised to find a Mr. Petty, with whom he had had an earlier dispute over whether Lewis should be the driver of a van pool, receiving the applicants. Again, Lewis's own testimony is dispositive:

Q. Would you tell the court what you're trying to say about Mr. Petty?

A. Yes, sir. I believe that my discrimination started right there from Mr. Petty that morning ... on February 12, .... Because Mr. Petty had a *personal* grievance against me because I went to the project manager [higher authority] about the van pool." (Tr. 29) (emphasis supplied)

The above and other evidence in the record—such as the subsequent repeated rehires of Lewis—amply bear out the trial court's findings that neither Lewis's discharge nor the delay in his rehiring stemmed from racial bias. We therefore affirm the district court's finding of no discrimination under the clearly erroneous standard of *Pullman v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

Moreover, as will be apparent from the remainder of our opinion, we also conclude that the conduct of Lewis and his counsel afforded an ample foundation for the other ground of the court's dismissal order: want of prosecution. From its inception, the conduct of this action by both Lewis and his counsel evidenced a careless disregard for both court and opposing counsel bordering on the insolent. The action was commenced by a pleading which was inaccurate even as to Lewis's citizenship and which asserted acts of discrimination which found no basis in Lewis's eventual testimony in court. Thenceforth it proceeded through a failure of Lewis's counsel and the refusal of Lewis to appear at a deposition specifically rescheduled to meet their convenience to its first dismissal for want of prosecution, occasioned by the failure of counsel to attend a docket call of which he admittedly had

**3.** Appellant objects to dismissal for failure to adduce evidence of racial animus because, he asserts, he had established a prima facie case and defendant had not articulated a legitimate nondiscriminatory reason for the decision not to rehire. *See Jackson v. City of Killeen,* 654 F.2d 1181, 1183 (5th Cir.1981) (relying on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as clarified in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). We reject this argument; appellant misunderstands the decision below. The evidence supporting defendant's nondiscriminatory reasons was offered by plaintiff himself, during his trial testimony. *See* Tr. 29; 44–45. Moreover, *McDonnell Douglas* represents merely a division of evidentiary burdens, and, in the words of the Supreme Court, "[t]he ultimate burden of persuading the trier of fact that a defendant inten-

tionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Finally, plaintiff had not presented any evidence that the defendant's nondiscriminatory reasons were a mere pretext. *See Furnco Construction Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978).

Thus, the dismissal on the merits below properly respected the burdens of proof established for this type of case. *See also United States Postal Service Board of Governors v. Aikens,* — U.S. —, —, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403, 409 (1983). "Because this case was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a prima facie case. We think that by framing the issue in these terms they have unnecessarily evaded the ultimate issue of discrimination vel non." (footnote omitted)

notice. Reinstated and set for a day and hour certain, its commencement was delayed forty-five minutes while the court awaited the arrival of plaintiff's sole intended witness, Lewis himself.

There then followed two hours of testimony by Mr. Lewis in which, despite an occasional early and conclusionary suggestion that he had been subjected to racial discrimination, he candidly and specifically attributed his discharge to the racially evenhanded enforcement of a valid rule against horseplay and the delay in his rehiring to the personal dislike borne him by a supervisor, stemming from an earlier incident between them which had nothing to do with race. Granted a fifteen-minute recess to prepare to conclude their case, counsel and client returned forty minutes later (so it is claimed) to find that the court had awaited their return for fifteen minutes past the time appointed and dismissed the case a second time for want of prosecution as well as for lack of evidence.

▮▮▮ Our review of a dismissal for want of prosecution is limited to inquiring whether the district court abused its discretion. *Lopez v. Aransas County Independent School District,* 570 F.2d 541, 544 (5th Cir. 1978). Rule 41(b) of the Federal Rules of Civil Procedure permits a dismissal for want of prosecution where there is a record of delay or contumacious conduct and an indication that the client knew of or participated in the attorney's failure to prosecute. *See Anthony v. Marion County General Hospital,* 617 F.2d 1164, 1167–69 (5th Cir. 1980); *Lopez,* 570 F.2d at 544. Although the power to dismiss for want of prosecution should be used sparingly, *Ramsay v.*

*Bailey,* 531 F.2d 706 (5th Cir.1976), *cert. denied,* 429 U.S. 1107, 97 S.Ct. 1139, 51 L.Ed.2d 559 (1977), we think the court's action amply justified in this case. Against a background of casual disregard of its earlier orders, the court faced the election of Lewis and his counsel to return to court, not when directed to do so, but when and if it suited them. Such protracted and repeated trifling with a busy court, burdened with a heavy docket of serious matters, need not be borne.

▮▮▮ As for the court's award of $2,500 attorney's fees against the plaintiff, we think its finding that Mr. Lewis's action was frivolous, unreasonable and without foundation fully justified for the reasons stated above.[4] As the court noted in its order awarding the fees, the evidence offered by Mr. Lewis did not demonstrate, even by inference, any unlawful discrimination.[5] As a result, the court and the defendant were subjected to a proceeding virtually if not utterly spurious, one which wasted valuable time that should have been devoted to matters of at least arguable merit.

The language of the 1964 Civil Rights Act,[6] identical as regards plaintiffs and defendants, has been differentially interpreted. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Plaintiffs are to recover, we are told, virtually in the normal course, defendants only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700. The trial court so

---

**4.** We affirm the dismissal below on both the failure to prove discrimination and want of prosecution grounds, alternatively. As well as the decision on the substantive merits, the dismissal for want of prosecution also is "an adjudication upon the merits." Fed.R.Civ.P. 41(b); *see Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 247 n. 5 (5th Cir.1980). Therefore, the dismissal for want of prosecution alone is adequate as a basis for the attorney's fee award, provided the record independently supports the finding required by the *Christiansburg* decision. *See Anthony,* 617 F.2d 1164; *Lopez,* 570 F.2d 541.

**5.** Following the *Christiansburg* standard, discussed below in text, we have sustained awards of attorney's fees to prevailing defendants where the plaintiff's claim was supported by no evidence. *Harris v. Plastics Mfg. Co.,* 617 F.2d 438 (5th Cir.1980); *EEOC v. First Alabama Bank of Montgomery,* 595 F.2d 1050 (5th Cir.1979).

**6.** 42 U.S.C. § 2000e–5(k), "In any action or proceeding under this title the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs. . . ."

found, and that finding is not clearly erroneous; this is the standard for review of such findings in our circuit. *Nilsen v. City of Moss Point,* 621 F.2d 117 (5th Cir.1980). We affirm it.

■ As for the joint award against plaintiff's counsel, entered pursuant to 28 U.S.C. § 1927, we also find it warranted. Here, the standard is vexatious multiplication of litigation, *id.,* and once again, the district court's resolution of that issue must stand unless clearly erroneous.[7] On this record the district court was justified in concluding, as it did, that the entire course of proceedings was unwarranted and should neither have been commenced nor persisted in. Worse, the irresponsible *manner* in which the litigation was conducted further multiplied these needless proceedings. The district court's judgment is in all respects affirmed.

AFFIRMED.

TATE, Circuit Judge, concurring in part and dissenting in part:

I concur in the dismissal of the plaintiff Lewis' action, but I dissent from the award of attorney's fees against both Lewis and his counsel. In my opinion, even under the facts found by the majority, the award of attorney's fees against the claimant Lewis violates the principles laid down by *Christiansburg Garment Company v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), while the *additional* assessment against the plaintiff's counsel himself of personal liability for the *entire* defendant's fees so awarded is plainly not authorized by 28 U.S.C. § 1927, the basis for such award.

1

Initially, I must state that I have little quarrel with the majority's statements of

the facts and the evidence, nor its picture of at best a marginal civil rights discrimination claim ineptly handled. However, with regard to the filing of the suit itself and bringing it to trial, we must note:

The claim of discrimination is primarily based upon the failure to re-hire the claimant Lewis after his discharge on January 14, 1980. Lewis and his white helper had been discharged on that same day for "loafing," when they were caught wrestling over a bicycle. When they exercised the company-granted right to apply for rehiring some thirty days later, the white helper was re-employed, but Lewis, a black, was not. His suit is based upon the contention that he himself was not similarly rehired because of his race, even though the rehired white co-worker had been discharged because of the identical incident of misconduct.

Under settled principles, this established a prima facie case of discriminatory treatment, requiring the employer to explain that the disparate treatment was not animated by race. Based upon these facts, both the plaintiff Lewis and the attorney who represented him were clearly entitled to have his claim of discriminatory treatment adjudicated by a court.

As the majority found, however, Lewis himself in his testimony testified that the "discrimination started right there", when the supervisor did not re-hire him because he "had a *personal* grievance against me because I went to the project authority about the van pool."[1] Pretermitting whether on the re-direct examination (properly held by the majority to have been forfeited due to the failure of Lewis and his counsel to reappear after a recess) Lewis might have explained the "personal" grievance as race-related because of a race-dimension to the van pool action, I do not

---

**7.** *Monk v. Roadway Express, Inc.,* 599 F.2d 1378, 1381 (5th Cir.1979), *aff'd in relevant part sub nom. Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). In *Monk,* where this standard of review was adopted under § 1927, the statute did not provide for awards of attorney's fees. Subsequently, Congress amended the statute expressly to allow such an award, Pub.L. 96–349, 94 Stat. 1156 (codified as amended at 28 U.S.C.

§ 1927 (Supp. IV 1980)); this change had no effect on the standard of review.

**1.** The district court, incidentally, did not advert to or rely upon this reason in rejecting Lewis' claim—it found that the general foreman (*another* supervisory employee) had failed to re-hire him (after initially agreeing to do so) for non-racial reasons. Finding of Fact No. 3.

believe that Williams himself, unlearned in the law, should be held accountable in the *Christiansburg* sense for failing to know that the blatantly different re-hiring decision as between the white helper and himself was nevertheless not actionable, since the supervisor's racially disparate treatment was not *racially* motivated.

For present purposes, it is sufficient to note the exculpatory reason for the discriminatory treatment was not shown until the trial itself—and, more, that any further effort of the plaintiff Lewis to explain race-related aspects of the discriminatory re-hiring decision was cut off by the district court's holding that his want of prosecution (failure to appear after a recess) entitled the defendant to dismissal of the action. While I concur in the majority's determination that, under the facts, this penalty of dismissal was warranted, I seriously differ with the majority's view that the further penalty of attorney's fees should be imposed against Lewis or his attorney.

### 2

In *Christiansburg, supra,* the Supreme Court fully discussed the functional purposes of the award of attorney's fees in civil rights litigation. Due in part to the reliance upon enforcement of the national anti-discrimination policies by private suits, "a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstance." 434 U.S. at 417, 98 S.Ct. at 698 (emphasis the Court's). However, to "assess attorney's fees *against* plaintiffs simply because they do not finally prevail ... would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." 434 U.S. at 422, 98 S.Ct. at 701 (emphasis added).

The Court concluded, *Id.:*

Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate *after* it clearly became so.

(Emphasis added.)

The Court had earlier noted, cautioning against the ready assessment of the defendant's attorney's fees against a civil rights claimant found (after full trial) to have brought a "groundless" suit,

it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

434 U.S. at 421–22, 98 S.Ct. at 700–01.

From the previous description of the litigation, it appears plain to me that the plaintiff Lewis's suit was not "frivolous, unreasonable, or groundless" in the *Christiansburg* sense. Lewis, a black, and his white assistant were discharged because of the identical incident of misconduct. When they applied for re-employment, the white was hired, Lewis was not. Only at the trial, did it develop (from Lewis' own testimony, it is true) that the supervisor's discriminatory action against Lewis was based upon "personal" rather than racial animus. This may indeed exculpate the employer from liability for *racial* discrimination (even though in fact disparate racial treatment had occurred), but this merit-defense (resulting from the defendant's brief response at trial) does not convert this suit, based upon prima facie racial discrimination, to one that in the *Christiansburg* sense was without foundation when filed.

Moreover, to assess attorney's fees against the civil rights claimant is egregiously wrong under present facts, where the court-ordered truncation of his full case may have deprived him from presenting on re-direct examination an explanation that

the supervisor's "personal" animus may have had a colorable racial motivation.

### 3

The majority also affirms the district court's award against Lewis' attorney, holding him jointly liable with Lewis for payment of the entire $2,500 defendant's attorney's fees that had been assessed against Lewis himself. The district court did so solely on the basis of the evidence taken at the trial on the merits. Without further evidentiary hearing, it concluded that the plaintiff's attorney "should have advised Plaintiff not to proceed to trial because of the absence of proof on these issues. While a client might insist on proceeding to trial in the face of such advice, counsel for Plaintiff in this case made no effort to offer proof on these issues, even though he might have tried to do so by calling Plaintiff's supervisors as adverse witnesses to probe their motives in firing and refusing to re-hire Plaintiff. In following this course, attorney for Plaintiff unreasonably and vexatiously multiplied these proceedings."

The majority's basic reason for affirmance seems to be "that the entire course of proceedings was unwarranted and should neither have been commenced nor persisted in." [2]

The reasons that strongly militate against imposing liability for the defendant's attorneys fees upon the client Lewis himself, militate even more strongly against imposing them upon Lewis' attorney. The attorney had assured Lewis' access to the courts, to secure judicial redress for him for what on its face seemed blatant racial discrimination in rehiring the white assistant, but refusing to re-hire the black plaintiff, where both had been discharged for simultaneous and joint misconduct.

If it should be argued that before filing suit the attorney should have discovered that the reason for the racially discriminatory act was a non-actionable "personal" reason rather than an actionable "racial" reason, I would note: First, we do not know from the record other than that Lewis' trial response ascribing a "personal" reason for his non-rehiring may have surprised his own counsel as much as it delighted the defendant's; the unanticipated unfavorable response by one's own client, sometimes even after careful preparation, is a phenomenon not unknown in litigation practice. Second, because re-direct examination was forfeited, we do not know whether further testimony by Lewis might have ascribed racially tinged motivation to the supervisor's "personal" reasons for not re-hiring Lewis.[3]

---

**2.** The majority also notes that the "irresponsible *manner* in which the litigation was conducted further multiplied these needless proceedings." The incidents cited in the opinion are: the plaintiff and his counsel failed to appear at a deposition set for October 14, 1980; the plaintiff failed to appear at a November 2, 1980 docket call, as a result of which the case was dismissed and then later reinstated by motion upon the plaintiff's counsel's explanation of the (careless) reasons for the default; trial was delayed for forty-five minutes when the *plaintiff* (not counsel) failed to appear timely for the merit-trial of April 21, 1981; and the plaintiff and his counsel failed to reappear after a recess at that trial. For each of these lapses other sanctions are expressly given by the procedural law; and, in fact, one sanction—the dismissal of the suit—was in fact employed.

Fully sympathizing with the exasperation and impatience of the district court with these four delinquencies of the plaintiff's counsel, I am nevertheless unable to find in 28 U.S.C. § 1927, cited in text below, any authorization of the federal judiciary to impose upon a careless or even contemptuous lawyer personal liability for the full attorney's fees of the opposing

party. A different issue would have been presented, if the district court had particularized each incident and assessed attorney's fees only insofar as for that incident they were an "excess" cost of the litigation so occasioned. See 28 U.S.C. § 1927.

**3.** Even had Lewis' attorney known that his client would testify as to a "personal" reason for his discharge that, facially, was racially discriminatory, I incline to the belief that his attorney should not be subject to the sanction of personal liability himself for assuring access to the courts and judicial determination of what was at least on its face a racially discriminatory action. As *Christiansburg* notes, Congress intended to encourage access to the courts and judicial determination of claims of racial discrimination: "Congress entrusted the ultimate effectuation of that [anti-discrimination] policy to the adversary judicial process." 434 U.S. at 419, 98 S.Ct. at 699. The Congressional intent in permitting awards to civil-rights defendants was only "to protect defendants from burdensome litigation having *no* legal or *factual* basis." *Id.,* 434 U.S. at 420, 98 S.Ct. at 700 (emphasis supplied). It seems to

In summary, the *Christiansburg* reasons that prevent an award of his opponent's attorneys fees against a civil rights claimant, lest it merely *inhibit* his access to the courts, even more urgently apply against imposing personal liability for such fees upon his unsuccessful attorney who had assured his access to the courts, lest such a principle totally *deprive* the civil rights claimant of access to the courts.

4

The plaintiff Lewis' attorney was assessed with personal liability for the defendant's attorney's fees on the basis of 28 U.S.C. § 1927 (as amended in 1980). This enactment provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the *excess* costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

(Emphasis added.)

The 1980 amendment to this statute added attorney's fees and expenses to the costs for which a sanctioned attorney could be held personally liable. This amendment was in response to the holding in *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) that such added non-"cost" items were not awardable within the then-terms of the statute.

Except for the added items of putative personal liability, however, the wording of the predecessor statute is identical to the present, as are the principles affecting the scope of an attorney's liability under that statute, as enunciated by the Court in *Roadway Express, supra,* and by the reviewed decision of this court, 599 F.2d 1378 (5th Cir.1979), expressly approved by the Court. The Court stated that § 1927 "is indifferent to the equities of a dispute and

to the values advanced by the substantive law. It is concerned only with the abuse of court processes. Dilatory practices of civil rights plaintiffs are as objectionable as those of the defendants." 447 U.S. at 762, 100 S.Ct. at 2462. Earlier, the Court had reviewed the statutory history, 447 U.S. at 759–762, 100 S.Ct. at 2460–61, with its general purpose of penalizing " 'unnecessary prolixity, old useless forms, and the multiplication of proceedings, and the prosecutions of several suits which might better be joined in one.' " 447 U.S. at 760, 100 S.Ct. at 2461. I might add that, although the Court does not explicitly so hold, the tenor of its discussion is that the abuse aimed at was abuse of the judicial process *after* suit is filed, *see, e.g.,* 447 U.S. at 757 n. 4, 100 S.Ct. at 2459 n. 4, not at any claimed abuse that an attorney should deprive his client of a day in court by refusing to institute suit for him.

The Court also affirmed, 447 U.S. at 767, 100 S.Ct. at 2465, the earlier ruling of this court, 599 F.2d 1378, that the civil rights plaintiffs' attorneys were personally liable under § 1927. There, inter alia, we had pointed out that "§ 1927 should be strictly construed because it is penal in nature", 599 F.2d at 1382, and we had held that "§ 1927 provides only for *excess* costs caused by the plaintiffs' attorneys' vexatious behavior and consequent multiplication of the proceedings, and not for the total costs of the litigation." 599 F.2d at 1383 (emphasis the Court's).

In my view, the majority offends these principles in at least two respects. First, affording a strict construction to the statute in the light of its purposes as reflected by its legislative history, a claimant's attorney should not be penalized by personal liability for his opponent's attorney's fees simply because the attorney assured the claimant his day in court; and especially

---

me beyond cavil that Congress did not intend that a *defense* against a prima facie act of racial discrimination be decided in the lawyer's office (by his refusal to bring the suit, especially if inhibited by the fear of personal liability), rather than by affording the employee his day in court.

However, since under present facts there is no reason more than a naked assumption to hold that Lewis' attorney knew that the employer might prevail on this defense, I do not base this dissent upon this broader ground.

not when the skeletal facts presented a prima facie case of racial discrimination in a civil rights complaint. Second, if the attorney is to be penalized for unreasonable and vexatious actions in the conduct of the suit, his personal liability for the opponent's attorney's fees should be limited only to the *excess* costs so occasioned; he should not be liable for the opponent's total attorney's fees incurred in defending the claim on the merits.

5

The majority rather easily states that a clearly erroneous standard of review applies to the award of attorney's fees in present circumstances. If such indeed were the clearly applicable standard, I have no hesitancy in stating my belief that the awards of attorney's fees were clearly erroneous, for the reasons previously stated.

However, whether a civil rights suit was without foundation in law or fact at the time it was instituted, so as to cause the claimant or his attorney to incur liability for an opponent's attorney's fees, is clearly in my view a mixed question of law and fact. *Cf. Washington v. Watkins*, 655 F.2d 1346, 1351–54 (5th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 3021, 72 L.Ed.2d 474 (1982). The question presents issues that are reviewable as law-issues, insofar as they determine whether the facts reasonably found meet the requisite standard of law for assessing a civil rights claimant with his opponent's attorney's fees. I do not read *Nilsen v. City of Moss Point*, 621 F.2d 117 (5th Cir.1980), relied upon by the majority, as holding otherwise when it affirmed the *denial* of attorney's fees sought to be assessed against a civil rights plaintiff in that case.

Citing *Little v. Southern Electric Steel Co.*, 595 F.2d 998 (5th Cir.1979) and *Lopez v. Aransas County Independent School District*, 570 F.2d 541 (5th Cir.1978)—both of which had *vacated* the district court's assessment of attorney's fees against a civil rights plaintiff—, the *Nilsen* panel cursorily affirmed the denial of such an award against the *Nilsen* plaintiff. It succinctly stated that "we cannot conclude that his finding is clearly erroneous *or* that the dis-

trict court abused its discretion in denying the award of attorney's fees." 621 F.2d at 122 (emphasis added). In disposing briefly and without articulation of the unmeritious contention, I do not believe that the *Nilsen* panel's cursory indication of alternative reasons for the affirmance could have been intended to enunciate any far-reaching change in the standard of review, especially when decisions cited as authority would have been decided to the contrary of the new rule. See especially *Little, supra,* 595 F.2d at 1006.

With regard to an attorney's personal liability under 28 U.S.C. § 1927 for excess costs resulting from his vexatious acts, the majority correctly notes that the district court's determination that particular acts were vexatious in the light of the circumstances is subject to review under the clearly erroneous standard. *Monk v. Roadway Express, Inc.,* 599 F.2d 1378, 1381 (5th Cir. 1979). That decision is not, of course, authority for any holding that the district court's award of the entire opponent's fee against the lawyer is subject to such standard of review. Indeed, the *Monk* panel took pains, in remanding the case, to emphasize that § 1927 provides for personal liability of the attorney only for "excess costs" occasioned by his behavior, "not for the total costs of the litigation." 599 F.2d at 1383.

### Conclusion

For the reasons perhaps too fully stated, I must therefore respectfully dissent from the majority's opinion insofar as it affirms the assessment of the defendant's attorneys fees against the civil rights claim and against his lawyer who, by filing the suit, assured the claimant of his day in court.