Ana M. UVIEDO, Plaintiff-Appellee,

v.

STEVES SASH & DOOR COMPANY, Defendant-Appellant.

No. 83–1415.

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1984.

George P. Parker, Theo. F. Weiss, San Antonio, Tex., for defendant-appellant.

Les Mendelsohn, Barry H. Beer, San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, WILLIAMS and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

In this Title VII disparate treatment case, a magistrate acting as special master found in favor of the defendant-employer. The district court rejected the magistrate's recommendations in part, finding in favor of the plaintiff, Ana Uviedo, on one claim of wage discrimination and one claim of denial of promotion. The district court also awarded the plaintiff $7,500 in attorneys' fees. Defendant appeals. We affirm the district court's judgment on the substantive claims, but reverse the award of attorneys' fees.

I.

FACTS

Ana Uviedo worked for Steves Sash & Door Company ("Steves" or "the Compa-

ny") for a total of about twenty-eight months over a four-and-one-half-year period. She first began working for the Company on August 5, 1968 in the accounting and payroll section for a salary of $1.75 an hour. About eighteen months later, in February 1970, after her pay had increased to $1.95 an hour, she voluntarily left her employment.

Apparently finding Mrs. Uviedo to be a competent employee, the Company recalled her on several occasions to fill in temporarily for other employees, and in December 1971 asked her to return to work in the position of personnel clerk. She accepted and began work in January 1972. Problems quickly followed, however. Mrs. Uviedo learned that her predecessor, an Anglo female who had less overall tenure with Steves, had earned $2.35 an hour; Mrs. Uviedo was receiving only $2.00 an hour. In addition, she believed that she was being given more and more difficult work, including accounting tasks, than given her predecessor. As a result, she resigned in February after having performed the job for about a month. She filed a complaint with the EEOC almost immediately thereafter, alleging that she was being discriminated against in pay and other conditions of employment because of her national origin, Hispanic.

In April 1972, however, the Company again asked Mrs. Uviedo to return to work, this time as a purchasing clerk at a rate of $2.25 an hour. Again she accepted. Three months later, Steves, through its controller, Robert Abright, offered Mrs. Uviedo the job of personnel clerk. She agreed to take the position but requested an increase of 25 cents an hour to do so. Abright countered with an offer of a 10-cent-an-hour increase, but Mrs. Uviedo stated that this would not be sufficient. Abright then indicated that he would see what he could do. He failed to speak with Mrs. Uviedo about the position again, however, and in August the Company recalled Nancy Gibbon, another former employee of Steves, to fill the position offered Ana Uviedo; Mrs. Gibbon's pay was $2.65 an hour.

Mrs. Uviedo continued working for Steves and in January 1973 the Company placed her in the accounts payable position. On January 11, 1973 she informed Michael Cox, who had replaced Abright as controller, that she would resign if her pay was not increased to $2.75 an hour. She was told that no raise would be given. She then gave two weeks' notice. On January 17, 1973, however, she learned that another employee, an Anglo female, had received a pay increase. Upset by what she perceived as another discriminatory action by Steves, Mrs. Uviedo quit her job that same day. She again complained to the EEOC.

Following receipt of her right to sue letter from the Commission, Mrs. Uviedo initiated this lawsuit in the federal district court under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1985 in April 1977. She alleged that her employer had discriminated against her because of her national origin by denying her promotions, by paying her less than Anglo females for the same work, and by constructively discharging her. In July 1978 the district court referred the case to a United States magistrate as special master. Following an evidentiary hearing the magistrate, in May 1979, issued findings and recommended that the plaintiff be denied any relief and that judgment be rendered for the defendant. Mrs. Uviedo filed objections to the magistrate's findings and recommendations and in August 1983 the district court entered its order rejecting in part these recommendations. The district court found that the defendant's reasons for the difference in wages paid to Mrs. Uviedo and to a co-worker, Elaine Fisher, were pretextual and awarded her $98 in back pay. The court also found that the defendant failed to present any evidence regarding the Company's failure to promote plaintiff to the position of personnel clerk, awarding her $288 in back pay for this claim. Finally, the district court awarded the plaintiff attorneys' fees in the amount of $7,500. The court, however, accepted the magistrate's finding that the Company did not constructively discharge Mrs. Uviedo or discrimi-

nate against her with respect to her other wage and promotion claims. On appeal, the defendant-employer challenges the award of attorneys' fees and the findings of discrimination on the promotion claim and the wage discrimination claim.[1]

## II.

### STANDARD OF REVIEW

We review the factual findings of the magistrate acting as special master under the clearly erroneous rule, the same standard applied by the district court. *Rohde v. K.O. Steel Castings, Inc.,* 649 F.2d 317, 319–20 (5th Cir.1981); *Matter of Multiponics, Inc.,* 622 F.2d 709, 722 (5th Cir.1980). Thus, we can affirm the district court's action partially rejecting the magistrate's recommendation only if our review leaves us "with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The clearly erroneous rule applies not only to the magistrate's subsidiary findings but also to his ultimate finding respecting discriminatory intent. *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Page v. U.S. Industries, Inc.,* 726 F.2d 1038, 1053 (5th Cir.1984).

## III.

### PROMOTION CLAIM

To establish a *prima facie* case of disparate treatment in promotion, a plaintiff must show: (1) membership in a protected group; (2) an application for an open job for which he or she was qualified; (3) rejection; and (4) action by the employer in promoting or hiring a nonminority for the job or in continuing to seek nonminority

applicants for that job. *Page,* 726 F.2d at 1055; *McDonnell-Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Once a plaintiff has established a *prima facie* case, the defendant must articulate a nondiscriminatory reason for failing to promote the plaintiff. If the defendant does so, the plaintiff then may attempt to show that the defendant's reasons are pretextual. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). The burden of persuasion remains at all times on the plaintiff. *Id.* at 253, 256, 101 S.Ct. at 1093, 1095.

The magistrate generally found that Ana Uviedo, "[t]aking the evidence presented by the plaintiff in its most favorable light," had made a *prima facie* case. He also found, however, that the defendant had rebutted Mrs. Uviedo's *prima facie* case and that she had failed to show that the "reasons articulated by defendant for not promoting her ... were merely a pretext." The district court rejected the magistrate's finding of no discrimination with respect to Mrs. Uviedo's nonpromotion to the personnel clerk job in July 1972, finding that the defendant failed to come forward with any nondiscriminatory reason for not promoting her.

■ Appellant contends that the district court was wrong for several reasons. First, it argues that Mrs. Uviedo was not denied a promotion and thus, contrary to the magistrate's finding, did not make a *prima facie* case because she turned down the position when Abright offered it to her. For this reason, Steves argues, this court should view the issue not as one involving a denial of promotion but rather as one concerning a disparity in wages.[2] We re-

---

1. The plaintiff attempted to cross-appeal the denial of her constructive discharge claim but failed to file a timely notice of cross-appeal.

2. Steves compares Mrs. Uviedo's situation to that faced by a plaintiff who alleges constructive discharge due to wage discrimination. We have held in such cases that wage discrimination alone does not provide a grounds for a construc-

tive discharge, reasoning that the plaintiff should instead pursue her Title VII remedy for the discrimination in pay. *See, e.g., Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 66 (5th Cir.1980); *Pittman v. Hattiesburg Municipal Separate School District,* 644 F.2d 1071, 1077 (5th Cir.1981). In the same way, defendant argues, Mrs. Uviedo's only option was to take the job and then complain later about

ject this argument. Although the magistrate found, and the record shows, that Abright offered .the job initially to Mrs. Uviedo, the magistrate also found that Abright never responded to her request for a 25-cent raise and that she heard no more about the position until learning of Nancy Gibbon's appointment. Thus, the record does not reflect that Mrs. Uviedo rejected the position. More importantly, she certainly did not reject a position paying $2.65 an hour, the position awarded Mrs. Gibbon and the basis for Ana Uviedo's claim.[3] The magistrate's finding of a *prima facie* case was not clearly erroneous.

■ Appellant next argues that the record is replete with nondiscriminatory reasons for selecting Nancy Gibbon for the position and for paying her more than either offered or sought by Mrs. Uviedo. Appellant points out that Mrs. Gibbon, though not employed by the Company at the time Abright approached Mrs. Uviedo about the personnel clerk position, had overall greater tenure with Steves; she had worked for the Company for about a total of fifty-two months in comparison to plaintiff's approximately twenty-three months of cumulative service. In addition, appellant points to testimony reflecting that Mrs. Gibbon had more prior experience than Mrs. Uviedo in the position of personnel clerk at Steves and to documentary evidence showing that she had received wage increases during Mrs. Uviedo's absence from the Company. It is certainly possible that these facts could be legitimate reasons for promoting one employee over another or for paying one employee more than another. The difficulty here, however, is that defendant never articulated to the magistrate that these *were in fact* the reasons for the particular challenged action. The issue in a disparate treatment case is whether a defendant had a discriminatory intent. *Page*, at 1045. Establishment of a *prima facie* case creates a presumption that an employer did unlawfully discriminate. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. "If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Id.* Appellant argues, however, that it was not required to offer rebuttal evidence because plaintiff's own witnesses offered the reasons for the Company's decision to promote Mrs. Gibbon instead of Mrs. Uviedo. To support this assertion, appellant cites cases in which courts have held that a defendant is under no obligation to present evidence through its own witnesses where the plaintiff's witnesses have offered evidence supporting the defendant's nondiscriminatory reasons. *See, e.g., Lewis v. Brown & Root, Inc.*, 711 F.2d 1287 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984); *Nulf v. International Paper Company*, 656 F.2d 553, 560 (10th Cir.1981). Appellant misperceives the holding of these cases and their application here. In this court's decision in *Lewis*, for example, the plaintiff, who was claiming racial discrimination, clearly stated that his failure to be reemployed was due to a *personal* grievance between him and another individual and that, in discharging him, his supervisor was doing what was best for him to do as a superior. Plainly, he offered his employer's nondiscriminatory reasons for these actions.

■ Here, by contrast, Mrs. Uviedo did not testify that the defendant failed to pro-

---

any pay disparity. This argument is mistaken. In these cases, the plaintiffs, unlike Mrs. Uviedo, had a present remedy but chose not to pursue it.

3. Thus, the cases cited by appellant involving employees who have turned down a job and then later claimed that they were denied a promotion are not on point. Moreover, even if we were to consider that Mrs. Uviedo in some sense "rejected" the position, we must still address the central issue: why the employer was willing to pay an Anglo female a higher salary than a minority female for the same position. Steves' willingness to pay Mrs. Gibbon $2.65 an hour to perform the duties of the personnel clerk negates any inference that the pay rate sought by Ana Uviedo—$2.50 an hour—was more than the intrinsic value of the job. The issue then must be why the Company treated these two individuals in a different manner.

mote her for reasons other than her national origin. Nor did any of her witnesses so testify. What appellant relies on is instead testimony by Mrs. Gibbon in response to general background questions by the plaintiff's counsel regarding the dates of her employment, etc. The record does not reflect that appellant followed up on this testimony during cross-examination or that it ever attempted to develop this evidence in any manner as supporting its actions. The burden on the defendant in rebutting a plaintiff's *prima facie* case is not a heavy one. "All the employer need do is to raise a genuine issue of fact as to whether it discriminated against the plaintiff." *Redditt v. Mississippi Extended Care Centers, Inc.,* 718 F.2d 1381, 1385 (5th Cir.1983). The defendant accomplishes this by introducing into evidence "a clear and reasonably specific legally sufficient explanation" for its action. *Id. See Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. This the defendant failed to do. It is beyond the province of a trial or a reviewing court to determine—after the fact—that certain facts in the record might have served as the basis for an employer's personnel decision.[4] Thus, we hold that the magistrate could not have relied on the evidence regarding Mrs. Gibbon's tenure to support his finding of nondiscrimination, since there was no evidence that this was the reason for the complained of action.

■ Finally, appellant argues that it did rebut any *prima facie* case made by Mrs. Uviedo through a statement by Monroe

Voight, vice president and general manager of Steves. Voight stated that in response to complaints by Mrs. Uviedo about pay differences with other employees, he told her that the other employees had been there longer or were performing different jobs. This statement, although quite general, might be sufficient under certain circumstances; it is not here. In this case, Mrs. Uviedo confronted her employer with her dissatisfaction in the salary offered for this particular job for which it had selected her. Thus, unlike many cases in which an employee makes a claim of wage disparity, the Company was aware of Mrs. Uviedo's concern before making its decision, which was a particularized one. A general policy statement regarding pay, without evidence that it was related to this particularized decision, is of only the most attenuated relevance. Moreover, the statement by Voight did not even purport to apply to the promotion situation. Rather, it was made in response to a question regarding what Voight *told Mrs. Uviedo* when she compared herself to other employees. There is no suggestion of any legitimate reason why rebuttal evidence related to this specific decision would not be available to Steves. Under all these circumstances, the general statement by Voight does not suffice to rebut Mrs. Uviedo's *prima facie* case.

■ We agree with the district court that appellant failed to rebut Mrs. Uviedo's *prima facie* case. Moreover, we find clearly erroneous the magistrate's ultimate finding of nondiscrimination with respect to the

---

**4.** The cases cited by appellant, including *Lewis* and *Nulf,* do not persuade us to the contrary. For the most part, these cases involve Rule 41(b) dismissals by the court following the plaintiff's case. *See, e.g., Holden v. Commission Against Discrimination, etc.,* 671 F.2d 30 (1st Cir.), *cert. denied,* 459 U.S. 843, 103 S.Ct. 97, 74 L.Ed.2d 88 (1982); *Gaballah v. Johnson,* 629 F.2d 1191 (7th Cir.1980); *Sime v. Trustees of the California State University and Colleges,* 526 F.2d 1112 (9th Cir.1975). In each case, the plaintiff claimed that he or she had made a *prima facie* case and expected that the defendant would articulate reasons during its case, which reasons the plaintiff would then show to be pretextual. *See Holden,* 671 F.2d at 36. While these cases reject a rigid three-step pro-

cess for the burden of proof in Title VII cases, they do not alter the requirement that the defendant articulate a clear reason for its action. Rather, they reflect that the reasons can be stated during the plaintiff's case either through adverse witnesses, documentary evidence, or express statements by the plaintiff, such as in *Lewis.* As the First Circuit has stated:

"In determining the propriety of a Rule 41(b) dismissal of a Title VII claim, the question is whether plaintiff had notice of defendant's stated reasons for dismissal and an opportunity to demonstrate their pretextual character." *Holden,* 671 F.2d at 36.

*See also Ekanem v. Health & Hospital Corporation of Marion City, Indiana,* 724 F.2d 563 (7th Cir.1983).

defendant's failure to promote the plaintiff. Accordingly, we affirm the district court's determination.[5]

## IV.

### WAGE DISCRIMINATION CLAIM

The magistrate also found that "the plaintiff's failure to receive raises ... on an equal basis with the other employees was not related to her national origin." The district court agreed with the magistrate on three of Mrs. Uviedo's claims of wage discrimination, but rejected this finding as to one of her claims, that comparing her pay as personnel clerk to the pay received by her predecessor, Elaine Fisher. Appellant challenges the district court's decision and contends that the magistrate's finding as to this particular claim was not clearly erroneous. We agree with the district court.

■ To establish a *prima facie* case of discrimination respecting compensation a plaintiff must prove (1) that she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility. *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071, 1074 (5th Cir.1981); *Plemer v. Parsons-Gilbane, Inc.*, 713 F.2d 1127, 1137 (5th Cir.1983). The analysis is the same even where the two employees whose salaries are being compared are employed at different times in the same position. *Pittman; see also Bourque v. Powell Electrical Manufacturing Company*, 617 F.2d 61, 64 (5th Cir.1980) (comparison of salary to plaintiff's predecessor). The issue in this case is whether Ana Uviedo and Elaine Fisher were in fact performing substantially the same job.[6] Appellant contends that they were not.

■ In its analysis of this claim, the district court noted that the magistrate specifically found that the "plaintiff returned to defendant's employ in the personnel department at $2.00 per hour where she succeeded Elaine Fisher who had been paid $2.35 per hour." Appellant argues that the district court misinterpreted the word "succeeded" as meaning that Mrs. Uviedo took over the same job performed by Elaine Fisher. In support of this argument, appellant points to testimony by one of Mrs. Uviedo's own witnesses, Maria Villanueva, who stated that Ana Uviedo was performing accounting, not personnel, work while she (Villanueva) was there. We find Mrs. Villanueva's testimony in this regard to be of little probative value. As the magistrate noted in his statement of the case, this witness also testified that she was not really familiar with the duties of Elaine Fisher. Moreover, there is no dispute that Mrs. Uviedo was performing some accounting duties; her contention was, however, that she was performing the duties of personnel clerk at the same time.[7] It would be incongruous to find that Mrs. Uviedo was indeed doing the work of the personnel clerk position but that she was foreclosed from a wage discrimination claim because she was also performing other, additional tasks. More importantly, whatever conflict

5. In so doing we note that the district court in making its determination relied in part on a finding by the magistrate that Abright told Nancy Gibbon "he did not wish to hire any more Mexican-American ladies." Although the magistrate also found that the defendant, in spite of this statement, continued to hire Mexican-Americans, this expression by Abright further supports a finding of discriminatory motive in his actions regarding the nonpromotion of Mrs. Uviedo.

6. The only justification offered by Steves for differences in compensation were (1) that the plaintiff was doing different work from those with whom she was comparing herself, or (2) that the other individuals had been working for the defendant a longer period of time. It is undisputed that Elaine Fisher, who first started to work for the defendant in August 1971, at the rate of $2.35 an hour, had *less* tenure than Mrs. Uviedo.

7. By the same token, we find that the testimony of Nancy Gibbon that Mrs. Uviedo was performing the personnel job is also of little probative value. Mrs. Gibbon was not employed by the Company during the time Ana Uviedo performed that job.

there may be in the record,[8] the magistrate found that Ana Uviedo succeeded Ms. Fisher. We do not accept appellant's argument that the magistrate intended something other than the plain meaning of this word. Nor do we find that the magistrate's fact-finding on this issue is sufficiently ambiguous to require a remand.[9]

## V.

### ATTORNEYS' FEES

During the hearing before the magistrate, the parties stipulated that $7,500 would be reasonable attorneys' fees for the successful party.[10] Based on this stipulation, the district court, stating that Mrs. Uviedo "is the prevailing party," [11] awarded her the full $7,500 amount. We reverse the award.

■ As a threshold for recovering attorneys' fees, one must demonstrate that he is the prevailing party; this is plain both from the "unequivocal language of § 706(k)" and "decisional authority." *Commonwealth Oil Refining Co., Inc. v. E.E.O.C.*, 720 F.2d 1383, 1385 (5th Cir.1983), *rehear-*

ing *en banc denied*, 734 F.2d 1479 (5th Cir.1984). *Commonwealth Oil* provides this court's most recent statement of the test for determining whether this threshold requirement has been satisfied. " 'The proper focus is whether the plaintiff has been successful on *the central issue* ... as exhibited by the fact that he has acquired *the primary relief sought.*' " [12] *Id.* at 1385, quoting *Iranian Students Ass'n v. Edwards*, 604 F.2d 352, 353 (5th Cir.1979). The court in *Commonwealth Oil* further described the test in these words:

"In many if not most *lawsuits*, whether tried or settled, it is possible to compare the allegations made with the results obtained and pick out *a winner*: a plaintiff who carried the day on his major claim, a defendant who defeated the major thrust *of the suit.* In other cases it may be that neither party could fairly be said to have carried the day, and in such event there should be no fee award to either." *Id.* at 1385–86 (footnote omitted) (emphasis added).

■ Applying this test, we find that Mrs. Uviedo did not prevail on her claim for

8. It is not our task as a reviewing court to resolve factual disputes.

9. In addition, we find it significant that defendant never stated who was performing the personnel duties if Mrs. Uviedo was not doing so during this time.

10. The stipulation was expressed as follows:
"MR. MENDELSOHN: The stipulation is that if the Plaintiff wins in this case and if there are pleadings to support the granting of attorney's fees, we have agreed that the reasonable amount of attorney's fees we will be entitled to is $7500. On the other hand, if the Defendant wins and if the Court, based on the pleadings and evidence, feels that this is the kind of suit that would warrant attorney's fees being paid to the Defendant and if they have support for it, likewise a reasonable amount would be $7500, but the Defendant would have to consider the pleadings. I'm sorry. I mean the Court would have to consider them."

11. Section 706(k) of Title VII provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ...."

12. The Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), preceded *Commonwealth Oil* and was, in fact, discussed in the latter. Thus, *Hensley*, which requires the computation of attorneys' fees based on the measure of success achieved, did not change the rule applied in this circuit for determining who has prevailed in a civil rights action. We acknowledged in *Commonwealth Oil* that this rule is less generous than that applied in the First, Seventh, and Ninth Circuits and discussed in *Hensley*. 720 F.2d at 1383 n. 2. In these circuits, a plaintiff may be considered to have prevailed if he succeeds on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.*, citing *Hensley*, 103 S.Ct. at 1939 n. 8. Nor does *Adams v. Reed*, 567 F.2d 1283 (5th Cir.1978), suggest a different standard. In *Adams* this court indicated that a plaintiff who won on her retaliation claim but lost on her main claim—discrimination based on sex—was nevertheless "sufficiently successful" to be considered a prevailing party. *Id.* at 1288. This statement was dictum, however, as the court in *Adams* affirmed the district court's denial of attorneys' fees. The test for determining prevailing party status was not at issue.

purposes of attorneys' fees under Title VII. She succeeded on only one of four disparate wage claims and on one of two claims alleging denial of promotion. She lost on her claim of constructive discharge which, based on the magistrate's summation and the amount of relief sought, appears to be the central issue in her suit. She asked for injunctive and declaratory relief; she received neither. In addition, of the approximate $48,000 in damages sought, she has received only $386 plus interest. Appellant is correct in asserting that one does not have to receive all or nearly all the relief one seeks to be considered a prevailing party. However, under *Commonwealth Oil* a greater measure of success in the context of the suit as a whole is necessary than that achieved by plaintiff here. We do not, of course, intend to disparage the success, discretely considered, that Mrs. Uviedo has achieved. Certainly she has shown that there was merit to some of her contentions. But she has not shown merit in most of them, or in the most important of them, or in any that could fairly be described, singly or collectively, as the central issue in this case. We simply hold that under the law of this circuit, she was not "*the* prevailing party" in this lawsuit for the purpose of receiving attorneys' fees.[13]

Therefore we affirm the district court's findings regarding discrimination in compensation and promotion. We reverse, however, the award of attorneys' fees to the plaintiff.

AFFIRMED in part and REVERSED in part.

JERRE S. WILLIAMS, Circuit Judge, with whom THORNBERRY, Circuit Judge, joins, concurring specially:

We concur in the result. We feel that we are bound by the decision of this Court in *Commonwealth Oil Refining Co., Inc. v. EEOC*, 720 F.2d 1383 (5th Cir.1983), in which this Court denied rehearing en banc, 734 F.2d 1479 (5th Cir.1984). The emphasis in that case upon the "central issue" and obtaining the "primary relief sought" is binding upon us. We emphasize that we feel this requirement is not made necessary by the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and indeed may well be contrary to the import of that case. We feel that in *Commonwealth* the Fifth Circuit adopted an unduly restrictive rule with respect to recovery of attorney's fees in a Title VII case, as Judge Tate effectively pointed out in his dissenting opinion. *Id.* at 1386. The *Hensley* decision specifically recognized without disapproval the more "generous formulation" of the right to receive attorney's fees in such cases as *Nadeau v. Helgemoe*, 581 F.2d 275, 278 (1st Cir.1978); *Busche v. Burkee*, 649 F.2d 509, 521 (7th Cir.1981), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212; *Sethy v. Alameda County Water District*, 602 F.2d 894, 897 (9th Cir.1979).

What should control the awarding of attorney's fees in this case is the recognition that Ana Uviedo brought suit under Title VII claiming several instances of discrimination based upon national origin. She failed to establish some of those instances, but she was successful in establishing others. It follows inescapably we have a case in which Title VII national origin discrimination has been established. And yet because of the unduly restrictive rule of this Circuit we are denying any attorney's fees to this victim of discrimination who successfully proved that the defendant had engaged in Title VII discrimination against her. While this seems to be the law of this Circuit, it should not be the law of this Circuit. In effect we are abandoning our general rule of liberality in pleading. Fed. R.Civ.P. 8(f); 2A Moore's Federal Practice ¶¶ 8.13, 8.34. We are saying that the plain-

---

**13.** Because of our resolution of this issue, we need not decide whether the stipulation required the district court to award the full $7,500 fee amount to Mrs. Uviedo or whether the court should rather have apportioned the award according to *Hensley*. Steves does not challenge the amply supported determination of the magistrate that Steves is not entitled to attorneys' fees under the *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), criteria applicable to such awards against plaintiffs.

tiff must lose because she undertook to prove too much. If she had based her suit solely upon the instances of discrimination she successfully proved, she would recover attorney's fees without question.

The law is well established in civil rights cases that attorney's fees are properly awarded to a plaintiff even though the actual monetary damages growing out of the violation of civil rights are small or even nominal. The principle was well stated in *Perez v. University of Puerto Rico*, 600 F.2d 1, 2 (1st Cir.1979):

The award of counsel fees is not intended to punish the defendant in any way. Rather it is to permit and encourage plaintiffs to enforce their civil rights. To declare those rights while simultaneously denying the award of fees would seriously undermine the declared congressional policy. Fees may not be denied simply because only nominal damages are awarded.

And in *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir.1978), this Court said: "Congress did not intend that the vindication of statutorily granted rights would depend on the private party's economic resources or on the availability of free legal assistance." Ana Uviedo did vindicate her rights against national origin discrimination in this case. She should be entitled to attorney's fees. In further support of the principle that attorney's fees can properly be awarded even though recovery by the plaintiff claiming the violation of civil rights is small in monetary terms, *see Carey v. Piphus*, 435 U.S. 247, 257 n. 11, 267, 98 S.Ct. 1042, 1049 n. 11, 1054, 55 L.Ed.2d 252 (1978); *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1220 (5th Cir.1982); *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir.1981).

This plaintiff should not suffer for failing to establish some claimed national origin discriminations when she successfully established other national origin discriminations under Title VII and was awarded damages. We cannot reconcile this holding with what should be the proper interpretation and application of Title VII in the awarding of attorney's fees. Uviedo fails

to obtain an award of attorney's fees although she proved that the company discriminated against her based upon national origin in violation of law.

In spite of the denial of rehearing en banc in *Commonwealth*, we feel most strongly that the rule stated in the *Commonwealth* case is an incorrect application of *Hensley v. Eckerhart* and flies in the face of the congressional policy to award attorney's fees to those who prove discrimination and therefore prevail in Title VII cases. It is our view that this Court should reconsider en banc its unduly restrictive rule and bring its holdings in line with the *Hensley* case, congressional intent, and the other courts of appeals in the United States.