United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 23, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-40436
Summary Calendar
_____

PATRICIA WILLIAMS; TERRI L. WATKINS

Plaintiffs - Appellants

v.

GALVESTON INDEPENDENT SCHOOL DISTRICT

Defendant - Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
G-02-CV-236

_____

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

Plaintiffs-Appellants, administrators for the Galveston
Independent School District ("GISD"), filed suit against their
employer under 42 U.S.C. § 1981. Appellants allege that GISD
discriminated against them on the basis of race in setting their
salaries. The district court granted summary judgment in favor of
GISD. Because we agree with the district court that Appellants

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

have raised no genuine issue of material fact, we affirm.

I.

Appellant Dr. Patricia Williams serves as Executive Director of Employee and Community Relations for GISD. Appellant Terry Watkins serves as Executive Director of Human Resources. Both women are African-American.

GISD assigns each administrative position to a particular "pay grade," a group of positions that fall within the same salary range. Dr. Williams and Ms. Watkins are both in pay grade 8, the highest level. At the time this suit was filed, two other employees were also listed at pay grade 8: E.J. Garcia, Assistant Superintendent of Curriculum and Instruction; and Paul McLarty, Chief Financial Officer.[1] Ms. Garcia and Mr. McLarty are both white.

The roots of Appellants' complaint go back to 2000, when GISD reorganized its upper administration. At that time, Dr. Williams was serving as Executive Director of Personnel, and Ms. Garcia was serving as Superintendent for Instruction. Their salaries were roughly equal. After GISD created the position of Executive Director of Employee and Community Relations, then-Superintendent Henry Boening approached Dr. Williams about taking the job. Dr. Williams alleges that Superintendent Boening promised that if Dr. Williams took the new position, her salary and responsibilities

---

[1] Mr. McLarty has since resigned.

2

would stay commensurate with the salary and responsibilities assigned to Ms. Garcia. Dr. Williams accepted the new position, and Ms. Watkins succeeded her.[2]

During the two years following this reorganization, GISD awarded Ms. Garcia and Mr. McLarty substantial raises. GISD claims that it was attempting to make top administrators' salaries more competitive with market rates.[3] GISD says it did not give Appellants similar raises because Appellants' salaries were at or above market rate for their positions. Between 1999 and 2002, the four administrators in grade 8 were paid the following salaries:

|         | Garcia   | Williams | McLarty  | Watkins  |
|---------|----------|----------|----------|----------|
| 99-00   | $72,630  | $72,630  | $73,000  | n.a.     |
| 00-01   | $83,440  | $75,129  | $82,686  | $71,648  |
| 01-02   | $94,249  | $77,630  | $92,499  | $76,673  |

Dr. Williams learned of this divergence and filed a grievance. After Superintendent Boening and the school board denied her grievance, she filed this suit. Ms. Watkins subsequently joined the suit.[4] Appellants allege that the difference between their salaries and the salaries of their white colleagues constitutes

---

[2] GISD changed the name of this position from "Executive Director of Personnel" to "Executive Director of Human Resources."

[3] Appellants allege that Mr. McLarty and Ms. Garcia met privately with Superintendent Boening to discuss these salary increases, but that Appellants were not invited.

[4] Ms. Watkins also complained of retaliation. She has since abandoned that complaint.

race discrimination in violation of 42 U.S.C. § 1981.[5]

The district court granted summary judgment in favor of GISD. The court concluded that Appellants could not succeed on their claim under § 1981 because their positions did not require substantially the same responsibility as those of their white colleagues. The court also determined that Appellants had failed to raise any genuine issue of material fact on the question of whether GISD's proffered race-neutral explanations for the disparity were pretextual.

## II.

We review a district court's grant of summary judgment *de novo*. *Price v. Fed. Express Corp.*, 283 F.3d 715, 719 (5th Cir. 2002). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-movant, raises no genuine issues of material fact and is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Price*, 283 F.3d at 719.

## III.

We evaluate claims of racial discrimination based only on

---

[5] 42 U.S.C. § 1981(a) (2003) provides:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

4

circumstantial evidence under the familiar burden-shifting analysis of *McDonnnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).[6] *See Price*, 283 F.3d at 719. Under this framework, plaintiffs begin by establishing a prima facie case of discrimination. *Pratt v. City of Houston*, 247 F.3d 601 (5th Cir. 2001).

To establish a *prima facie* case of discriminatory compensation, a plaintiff must prove "(1) that she is a member of a protected class and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility." *Uviedo v. Steves Stash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984); *see also Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.3d 1071, 1074 (5th Cir. Unit A May 1981).[7] If a plaintiff's job responsibilities are significantly different from the responsibilities of employees she cites as a point of comparison, then the plaintiff has not made out a *prima facie* case. *Id.* In considering whether two jobs require substantially the same

---

[6]    Appellants evidently concede that they can offer only circumstantial evidence because they discuss only the *McDonnell Douglas* analysis. Dr. Williams suggests that Superintendent Boening steered her into her current position as Executive Director of Employee and Community Relations and away from Assistant Superintendent of Curriculum and Instruction, which eventually became a higher-paying job. This allegation cannot save her claim for *discriminatory compensation*, which requires that the plaintiff's job require substantially the same responsibility as a higher-paid employee's job. *See Uviedo v. Steves Stash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984).

[7]    GISD does not dispute that Appellants are members of a protected class.

responsibility, we have looked to the jobs' duties, *see Uviedo*, 738 F.2d at 1431; *Pittman*, 644 F.2d at 1074, including the jobs' relative supervisory authority and responsibility for revenue, *see Cullen v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 700 (7th Cir. 2003).

Appellants attempt to found their *prima facie* case on a comparison between their positions and the positions held by Mr. McLarty and Ms. Garcia.[8] However, each employee's responsibilities are plainly dissimilar from the responsibilities of the other three grade 8 employees.[9]

As Executive Director of Employee and Community Relations,[10] Dr. Williams oversees employee relations, GISD's grievance procedure, employee programs, and parental participation. She administers a budget of approximately $118,000 and supervises only one employee, her secretary.

---

[8] Dr. Williams compares her responsibilities to those of Ms. Garcia and Mr. McLarty. Ms. Watkins compares her responsibilities to those of Mr. McLarty only.

[9] The fact that GISD lists all four employees at grade 8 is not significant. Pay grades represent a range of possible salaries, and Appellants concede that salaries can differ within a pay grade.

[10] GISD points out that Appellants' job titles are different from the job titles of Mr. McLarty and Ms. Garcia. The name given to a particular job adds little to our analysis where, as here, the substance of the four jobs clearly differs. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1461 (7th Cir. 1994); *Orahood v. Bd. of Trs. of Univ. of Ark.*, 645 F.2d 651, 654 (8th Cir. 1981) ("We look to the actual job requirements and performance, not on-job classifications or titles.").

6

As Executive Director of Human Resources, Ms. Watkins oversees recruitment and training of teachers and other instructional personnel, incentive and training programs, and compliance with employment discrimination laws. She also influences employee salary and benefits. Ms. Watkins oversees a somewhat larger budget—approximately $290,000—and five employees report directly to her.

Assistant Superintendent Garcia oversees GISD's instructional programs and helps in the planning and evaluation of those programs. She also serves as acting superintendent when the permanent superintendent leaves the district. Ms. Garcia administers a budget of approximately $13 million. Eight employees report directly to her, and she assists with the supervision of all principals within GISD.

Chief Financial Officer McLarty oversees GISD's entire budget as well as maintenance, transportation, food service, athletic programs, insurance, worker compensation, district elections, and revenue collection. Six employees report directly to him, and he indirectly supervises approximately 350 GISD employees.

These descriptions demonstrate that the four grade 8 positions differ in many respects. Not only are their responsibilities dissimilar in substance, but the scope of their authority over GISD funds and employees differs. These four employees do not have "substantially the same responsibility," *Uviedo*, 738 F.2d at 1431.

These differences fatally undercut Appellants' claim for discriminatory compensation because "[i]t is not discrimination to treat differently situated persons differently." *Walton v. Bisco Inds.*, 119 F.3d 368, 373 (5th Cir. 1997).

Appellants nonetheless describe their responsibilities as comparable to the other grade 8 employees' responsibilities because all four grade 8 employees represent the district to the community and participate in district-wide planning, policymaking, and leadership. Described at this level of generality, almost any managerial position would have the same responsibility as Appellants' positions do.[11]

Appellants emphasize that they are important to the district. We have no doubt that their positions are crucial to GISD's operations. Undoubtedly Galveston's principals, teachers, and support staff also play crucial roles in the provision of education. In evaluating a claim of discriminatory compensation, we do not attempt to evaluate the importance of an employee's role in her organization. Rather, we look to the duties that employee performs. *See Uviedo*, 738 F.2d 1425; *Pittman*, 644 F.2d at 1074.

Appellants also assert that their qualifications and experience equal or exceed those of their colleagues. These

---

[11] Appellants warn that ruling against them will insulate all high-level managerial positions from discriminatory compensation claims because no two such positions will ever have similar duties. We disagree, and in any case the four positions presented here are too dissimilar to facilitate comparison.

considerations are likewise irrelevant when, as in this case, similarly qualified persons have taken dissimilar jobs.

## IV.

Appellants have failed to adduce any evidence showing that they have substantially the same responsibility as purportedly comparable employees. Appellants have therefore failed to raise any genuine issue of material fact as to their *prima facie* case. Because Appellants have faltered on the first step of the *McDonnell Douglas* analysis, we need look no further. *See Pittman*, 644 F.3d at 1074-75. We therefore AFFIRM the district court's grant of summary judgment.