United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 25, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————

No. 04-20825

———————

RAYMOND RUNNELS ET AL.,

Plaintiffs-Appellants,

v.

TEXAS CHILDREN'S HOSPITAL SELECT PLAN,

Defendant-Appellee.

———————

Appeal from the United States District Court
for the Southern District of Texas

———————

Before BENAVIDES, STEWART and OWEN, Circuit Judges.

PER CURIAM:[*]

This appeal is from a district court's grant of summary judgment in favor of an employer in a race discrimination case under 42 U.S.C. § 1981. Appellants allege disparate treatment in compensation and disparate treatment in promotion. Appellants claim that the district court erroneously admitted the employer's expert evidence and erroneously granted summary judgment. With respect to the expert witness evidence challenge, Appellants

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

strenuously argue that discrimination suits should not become a war of experts. However, binding precedent instructs that statistical evidence serves an important role in employment discrimination cases. We have reviewed the record and are convinced that there is no genuine issue of material fact. Finding no reversible error, we AFFIRM.

I.  FACTUAL AND PROCEDURAL HISTORY

Appellants are eight African-American technicians employed in the Biomedical Engineering Department ("Biomed") of Appellee Texas Children's Hospital ("TCH"). Biomed employs more than eighty individuals, most of whom are engaged in maintaining and repairing biomedical equipment. Biomed is divided into three groups, each of which services different types of equipment and has its own manager. Biomed's Director, Yadin David, and Assistant Director, John Weimert, oversee all three groups. Biomed's managers are all white males.

Biomed has three technician classifications of increasing responsibility: Biomedical Equipment Technician ("BMET"), Senior Biomedical Equipment Technician ("Sr. BMET"), and Specialist. Appellant Samuel Mojay is a BMET; Appellants Raymond Runnels, Beleke Awigichew, Marvin Henry, Kevin Davis, Kenneth Jenkins, and Glen White are Sr. BMETs; and Appellant Keidrick Perry is a Specialist.

Each Biomed employee receives an annual evaluation with a total rating that falls into one of four categories: Fails to Meet

Expectations, Meets Expectations, Exceeds Expectations, and Consistently Exceeds Expectations.  The evaluation is based on hours spent on preventative maintenance; trouble-shooting and repairing equipment; providing project support, technical support, and leadership when needed; performing incident investigations; ensuring quality of group work; documenting all work and materials; and attending meetings as assigned.  Biomed technicians receive an annual merit pay increase, which is tied to the evaluation rating the employee received.

In August 2000, a Specialist position opened in the Intensive Care/Operating Room ("ICU/OR") unit.  According to David, four Sr. BMETs were considered for the opening: Randy Taylor, Van Nguyen, Runnels, and Awigichew.  Management selected Taylor, a white male, to fill the Specialist position.

In June 2002, another Specialist position became available in the ICU/OR unit.  According to David, management considered all Sr. BMETs in that unit, including Nguyen (who had been the "runner up" for the 2000 opening) and Appellants Perry and White.  Nguyen, an Asian male, was selected to fill the position.

Shortly after management filled the 2002 Specialist position, Appellants filed this suit.  After discovery, TCH moved for summary judgment.  On August 10, 2004, a Magistrate Judge recommended granting summary judgment, concluding that Appellants failed to raise a genuine issue of material fact that TCH discriminated against them.  The district court adopted the Magistrate Judge's

3

recommendation and granted summary judgment.

II.  STANDARD OF REVIEW

The district court's decision to admit expert testimony is reviewed for abuse of discretion and should not be disturbed unless it is manifestly erroneous.  *General Electric Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).  This Court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court.  *E.g.*, *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996).  Summary judgment is proper if the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

III. ANALYSIS

A.  Admission of Expert Reports

1. Dr. Jeanneret

Appellants claim that the district court erroneously admitted the defendant's expert reports.  The admissibility of expert evidence is governed by Federal Rule of Evidence 702, which requires district courts to ensure that (1) expert testimony is "relevant to the task at hand" and (2) it "rests on a reliable foundation."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  The admissibility of expert evidence "is governed by the same rules, whether at trial or on summary judgment."  *First United Fin. Corp. v. United States Fid. & Guar.*

4

*Co.*, 96 F.3d 135, 136-37 (5th Cir. 1996).

TCH attached a report from Dr. P. R. Jeanneret to their motion for summary judgment. Jeanneret holds advanced degrees in the fields of industrial and organizational psychology with minors in measurement and industrial sociology.[1] Jeanneret conducted a statistical analysis assessing the effect of race on Biomed technicians' compensation, performance evaluations, and pay raises. His report concluded that there was no statistically significant race effect.

Appellants argue that the district court should have excluded Jeanneret's report for several reasons. First, they allege that Jeanneret's report failed to list the documents the expert reviewed and "[t]hus the failure to base his opinion on all the relevant facts makes any testimony of Dr. Jeanneret unreliable and therefore inadmissible."[2]

The Federal Rules of Civil Procedure require that an expert report contain "the data or other information considered by the witness in forming the opinions." FED. R. CIV. P. 26(a)(2)(B). Jeanneret's report provides that the statistical analyses were

---

[1] Appellants do not dispute that Jeanneret is qualified to provide expert evidence.

[2] Appellants also state that the "underlying documents have not been produced by Defendant." To the extent that Appellants intend to raise a discovery claim, we conclude that it is not adequately briefed and thus, need not be addressed. *See Communications Workers of America v. Ector County Hosp. Dist.*, 392 F.3d 733, 748 (2004).

5

based on (1) three years of Biomed technician salary information, (2) performance ratings from 1981 to 2002, and (3) annual pay increases during the relevant period. This data is set forth in Table 1 of the report. Additionally, even assuming the report omitted relevant data, the Supreme Court has held that the omission of relevant variables generally affects only the probative value, not the admissibility, of statistical analysis. *See Bazemore v. Friday*, 478 U.S. 385, 400 (1986).

Second, Appellants argue that Jeanneret's report should have been excluded because it "submits the ultimate question and seeks to answer the same . . . ." The Rules of Evidence, however, provide that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704.

Third, Appellants argue that the statistical evidence was irrelevant and unhelpful to the trier of fact. Federal Rule of Evidence 702 provides that an expert may offer an opinion if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Courts have long recognized the relevance and helpfulness of statistical evidence in proving, and disproving, employment discrimination. *See, e.g., Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977) (explaining that statistics are not only "competent in proving employment

6

discrimination" but "serve an important role"). Therefore, this argument fails.

Appellants also point out, presumably as a part of their relevancy challenge, that Jeanneret's report combined the three technician classifications in order to obtain a sufficient sample size. Appellants themselves allege department-wide discrimination within all three job classifications. Further, personnel decisions for all three classifications during the relevant period were made by the same group of four managers. Therefore, it was relevant that no statistically significant evidence of racial bias existed across job classifications.

Fourth, Appellants argue that Jeanneret's methodology was unreliable. They make the conclusory assertion, citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999), that Jeanneret's method "cannot be tested, subjected to peer review, there is no known rate of error, etc." The district court, however, found it unnecessary to assess the "*Daubert* factors" individually, and it need not have considered them. "*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'" *Id.* at 150 (emphasis in original). Indeed, the Supreme Court has held that a trial judge has "considerable leeway" in determining "*how* to test an expert's reliability." *Id.* at 152 (emphasis in original). The district court reasonably relied on the general rule that statistical analyses of the type employed by

7

Jeanneret are reliable.  *See, e.g., Lavin McEleney v. Marist College*, 239 F.3d 476, 483 (2d Cir. 2001).  In sum, the district court's decision to admit Jeanneret's report was not manifestly erroneous.

### 2.   Dr. Dyro

Appellants also challenge the district court's admission of Dr. Joseph Dyro's expert testimony.  Dyro, who has a doctorate degree in Biomedical Electronics Engineering, provided a report containing his expert opinion regarding TCH's organization table and job descriptions. Dyro concluded that "[p]romotion within functional groups is consistent with industry norms as the skill level of group members is specialized and the development of those skills typically requires a considerable expenditure in training expenses."

Appellants assert that Dyro likewise failed to provide a description of the documents he reviewed.  Contrary to Appellants' assertion, Dyro's report listed the documents upon which he relied and summarized the information contained in the documents.

Appellants also argue that Dyro's opinion invaded the province of the jury.  As previously set forth, the Federal Rules of Evidence do not prohibit evidence on this basis.  Accordingly, Appellants have failed to demonstrate that the district court committed manifest error in admitting evidence from Dyro.

8

B.    Discrimination Claims

1.    Denial of Promotion

Five of the Appellants, Runnels, Awigichew, Perry, Mojay, and White, generally contend that they "were denied promotions and/or an opportunity to apply for position[s] when employees of different races were simply placed in the position."[3]  Appellants' claims of discrimination are governed by the tripartite burden-shifting test established by *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973).   Under *McDonnell Douglas,* Appellants first must make a prima facie case.   The prima facie elements of a claim for disparate treatment are that: (1) the plaintiff is a member of a protected class under the statute; (2) he applied and was qualified for a job or promotion for which his employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) the position remained open and the employer continued to seek applicants, or the position was given to someone outside the protected class.   *Id.* at 802.

Second, if Appellants establish a prima facie case of discrimination, the burden shifts to TCH to articulate a legitimate, non-discriminatory reason for not selecting Appellants.

---

[3]  Appellants complain that job openings should have been, but were not, communicated to all employees via a job posting list. Appellants cite no authority for this proposition and at oral argument could not identify any legal obligation to post the job openings.

*Id.* Third, if TCH satisfies this burden, Appellants must prove that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000) (citation and internal quotation marks omitted). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

### a. August 2000 Promotion of Taylor

#### i. Perry and White

In August of 2000, Taylor was promoted from the position of Sr. BMET to Specialist in the ICU/OR unit. With respect to Perry and White, the district court agreed with TCH that because they were classified in a position two levels below the position of Specialist, neither were qualified for the promotion to Specialist. Only Sr. BMETs were considered for the promotion to Specialist. TCH provided evidence that promotions always were given one level at a time, and Appellants have not shown otherwise. Thus, because Perry and White were not qualified for the promotion, the district court correctly concluded that they have failed to make a prima facie case of discrimination.[4]

---

[4] It is not clear whether Mojay raises a claim of denial of promotion. Nevertheless, because he was not a Sr. BMET, his claim fails for the same reason. Also, it should be noted that subsequent to the promotions at issue in this lawsuit, Perry

ii.  Runnels and Awigichew

The district court found that Runnels and Awigichew, who were both Sr. BMETs, demonstrated a prima facie case of discrimination with respect to this denial-of-promotion claim.  TCH introduced evidence indicating that both Runnels and Awigichew were considered for the promotion.  The decisionmakers, David, Weimert, and the ICU/OR unit manager, however, agreed that Taylor was the best qualified for the promotion.  The managers believed that Taylor was the best choice because he had already worked in the unit.  Neither Runnels nor Awigichew had as much experience with the equipment for the ICU/OR unit.  Also, a Specialist would spend the majority of his time on administrative functions, and management believed that Taylor had excellent administrative skills.  Based on this evidence, the district court correctly found that TCH articulated a legitimate, non-discriminatory reason for not selecting either Runnels or Awigichew.

Runnels and Awigichew must now demonstrate that the legitimate reasons offered by TCH were not its true reasons but were a pretext for discrimination.  This Court has held that a plaintiff may survive summary judgment by submitting evidence that he was "clearly better qualified" than the employee selected for the promotion at issue.  *Celestine v. Petroleos de Venezuela SA,* 266 F.3d 343, 356–57 (5th Cir. 2001).  "However, the bar is set high

ultimately was promoted.

11

for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"  *Id*. at 357 (quoting *Deines v. Texas Dept. of Prot. & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)).

Runnels has admitted in his deposition that it had been twenty years since he had worked on the OR/ICU or laboratory equipment that a Specialist would be responsible for maintaining.  Awigichew admitted that he had never worked in the ICU/OR unit and had no experience working on that equipment.  Although both Runnels and Awigichew point to their longer service with TCH and believe they were more qualified than Taylor, neither of them has shown that they were "clearly better qualified" than Taylor.

In their brief, Appellants state that in the history of Biomed there has never been an African American promoted to a management position.  Appellants do not raise a disparate treatment claim with respect to any of the five management positions.  Moreover, Appellants have failed to allege, much less show, that any qualified African American applied for one of the five management positions.  Thus, the lack of African-American management does not appear to be relevant as to whether management engaged in purposeful discrimination against Appellants.

Appellants have failed to show that they were clearly better qualified than Taylor.  Thus, the district court properly granted summary judgment on their denial-of-promotion claims with respect to the 2000 promotion of Taylor.[5]

b.    June 2002 Promotion of Nguyen

In June of 2002, another Specialist position became available in the ICU/OR unit.  The management gave the promotion to Nguyen, who had been the supervisors' second choice for the August 2000 promotion.

In the district court, Runnels, Awigichew, Perry, White, and Mojay alleged a denial-of-promotion claim regarding this promotion given to Nguyen.  By this time, Perry and White had been promoted to Sr. BMETs.  It is not clear whether the district court concluded that all the Plaintiffs were qualified and had alleged a prima facie case.  Assuming all the Plaintiffs did demonstrate a prima facie case, TCH had to articulate a legitimate, non-discriminatory reason for selecting Nguyen over them.  Again, TCH states that Nguyen was more qualified than Appellants.

TCH argues, and the district court found, that Runnels and Awigichew still lacked significant expertise with the relevant

_____

[5] Appellants also rely on Weimert's statement to Runnels that because Runnels filed this lawsuit he would never be promoted. This statement may suggest animus because of the filing of the suit, but it does not indicate racial discrimination at the time of the promotions at issue.

equipment. Although Perry and White were Sr. BMETs in the ICU/OR unit, they had less experience in that position than Nguyen. TCH also points to Nguyen's outstanding performance as a reason for the promotion. The relevant experience and performance cited by TCH is a legitimate, non-discriminatory reason for selecting Nguyen over the Plaintiffs. Indeed, it appears that, as a group, even Appellants had championed Nguyen as the person most qualified for the previous 2000 promotion Taylor received.

As previously set forth, to survive summary judgment, the plaintiffs must show "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Celestine*, 266 F.3d at 357 (quoting *Deines*, 164 F.3d at 280–81). This Appellants have failed to do. Appellants have offered no more arguments or evidence than is set forth above regarding the 2000 promotion. Because they have not shown that they were "clearly better qualified" than Nguyen, their claims fail. The district court properly granted summary judgment on the 2002 denial-of-promotion discrimination claims.

### 2. Disparate Treatment in Compensation

#### a. Across Job Classifications

To establish a prima facie case of discrimination regarding compensation, a plaintiff must prove that (1) he is a member of a protected class and (2) he is paid less than a nonmember for work requiring substantially the same responsibility. *Uviedo v. Steves*

14

*Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984). Appellants Runnels and Awigichew, both Sr. BMETs, seek to establish a prima facie case by comparing their salaries to those of Specialists, a higher job classification. Relying on *Uviedo*, 738 F.2d at 1431, the district court found that Appellants failed to make out a prima facie case of compensation discrimination with respect to technicians "one promotion level up the organizational chart" because "the record does not support Plaintiffs' contention that Specialist, Sr. BMET, and BMET had the same job responsibilities." Runnels and Awigichew argue, however, that they are "performing the work of a Specialist." The only evidence that Appellants point to in support of the claim that their salaries should be compared to a Specialist's salary is their own testimony, and even this does not explain how their work is the same.

TCH contends that there is no dispute that Specialists have different job duties than do Sr. BMETs. Indeed, at one point in their brief, Appellants admit that there are important "position differences" between BMETs, Sr. BMETs, and Specialists. Similarly, Runnels testified that Specialists did more complicated technical work than Sr. BMETs. As TCH points out, Appellants' claim appears to be that they are performing above their level of "assigned responsibilities." Yet, they do not cite any authority for the proposition that this is sufficient to establish a prima facie case of compensation discrimination. Thus, Appellants fail to

15

demonstrate that their job responsibilities are substantially the same as those of a nonmember Specialist. *See Little v. Republic Refining Co., Ltd.* 924 F.2d 93, 97 (5th Cir. 1991) (holding that plaintiffs must show "nearly identical" circumstances in a claim of disparate treatment). Accordingly, the district court properly concluded that Runnels and Awigichew were not similarly situated to Specialists and that they could not establish a prima facie case by comparing their compensation to that of Specialists.

### b. Within Job Classifications

The remaining Appellants seek to show pay discrimination within their job classification. The district court held that Appellants made a prima facie case of discrimination with respect to this claim. TCH disputes this holding. We will assume *arguendo* that the district court correctly found a prima facie case was made.

TCH points to its merit-based evaluation system as a legitimate, non-discriminatory reason for the difference in compensation levels. Appellants respond that the "uneven application of the evaluation process" to minorities demonstrates a genuine issue of material fact regarding whether race is a factor in determining pay. For example, in support of this argument, Appellants compare the production numbers of certain nonminorities to their production numbers; however, production numbers are but one facet of an employee's evaluation. Furthermore, a Biomed

16

technician's salary is based upon starting pay, job classification, and performance evaluations. Thus, the evaluation is but one of three factors upon which an employee's pay is determined. Appellants never show that they are similarly situated as to *all the factors* with a nonminority employee who is more highly compensated. Appellants have failed to show "nearly identical" circumstances. *See Little,* 924 F.2d at 97. Further, as previously set forth, Jeanneret analyzed Biomed's technicians' compensation and performance evaluations and concluded that there was no statistically significant race effect. Accordingly, Appellants have failed to raise a genuine issue of material fact with respect to whether the evaluation process is pretext for discrimination.

IV.  CONCLUSION

For the above reasons, the district court's judgment is AFFIRMED.

17